State vs. Auguste et als.

No. 12,773.

STATE OF LOUISIANA VS. PLACIDE AUGUSTE ET ALS.

1. The rule of law requires that the confession of an accused person, sought to be
   admitted to the jury, shall have been made voluntary without the appliances
   of hope, menace, or fear by any other person.
2. And whether it was so made or not is to be determined upon consideration
   among other things, of the circumstances under which it was made.
3. The rule is not that, in order to render a statement admissible, the proof must
   be adequate to establish that it was voluntarily made; but it is that it must be
   sufficient to establish that *the making* of the statement was voluntary.

APPEAL from the Eleventh Judicial District Court for the Parish
of St. Landry.   *Dupré, J.*

*M. J. Cunningham*, Attorney General, and *R. Lee Garland*, District
Attorney (*P. A. Simmons, Jr.*, of Counsel), for Plaintiff, Appellee.

*John N. Ogden* for Adam Melançon, Defendant, Appellant.

Argued and submitted April 23, 1898.
Opinion handed down May 2, 1898.

The opinion of the court was delivered by
BLANCHARD, J.   An information was filed charging Placide Auguste,
B. Sylvestre and Adam Melançon with burglary and larceny.

When the case was called for trial Melançon alone was put upon trial.

Why the other two were not then tried does not appear.

A verdict of guilty having been returned, from a judgment thereon sentencing the accused to five years in the penitentiary, this appeal is taken.

He complains of error to his prejudice in the ruling of the trial judge permitting what the prosecution claimed to be a voluntary confession, to go to the jury.

Evidence of the confession being tendered by the State, in order to lay the basis therefor testimony as to its voluntary character was first offered, and to the end of bringing the matter properly before this tribunal this testimony was reduced to writing, and is annexed to the bill of exceptions.

The three parties hereinbefore mentioned were all arrested at or about the same time. Andrus, a deputy sheriff, effected the arrest of Melançon, manacled him with handcuffs and brought him to the jail, where he was placed in confinement. The other two accused parties were also confined in this jail.

A few days following the incarceration, Deputy Andrus, in company with Deputies Doucet and Millspaugh and the sheriff himself, repaired to the jail and entering the jail office sent for the prisoners. They were brought in and Andrus, acting as spokesman, says he told them he wanted them to tell him the truth in regard to the robbing of Mr. Hebert's store, how they had robbed it, when they had robbed it, how often they had robbed it, and what they had taken from the store. "It was then," he continues, "that he (meaning the accused, Melançon) told me how he, Placide and Buddy, got into the store." He affirms that he did not offer the accused any inducement, or immunity from punishment; that he did not frighten or intimidate him, nor was he frightened or intimidated; and that the confession was voluntary. On cross-examination he admits the accused had not sent for him at the time of the alleged confession, but that he had sent for the accused, and that the accused did not volunteer of himself to make a statement before he was sent for.

It also appears from his evidence, on the cross-examination, that a scaffold or gallows, on which a murderer had recently been executed, had been left standing in the jail yard, and that the pris-

oners could see it in passing to and from the jail. Asked if he advised them to make a statement, he answered: "No; I told him to tell the truth," and asserts he did not say to him it would be better for him to make a statement.

Deputy Millspaugh was called as a witness, and, the testimony of Andrus being read to him, he declared he corroborated the same.

The accused, placed on the stand at this juncture, denied he had made any confession to Andrus; testified the latter had endeavored to force him to confess; that he had told him he would be sorry if he did not, etc. He states further that the way Andrus had spoken to him frightened him.

The trial judge ruled the confession had been freely and voluntarily made, and admitted the evidence offered of the same.

In determining the question presented it will not be necessary to give effect to the testimony of the accused.

Considering only the evidence adduced on behalf of the prosecution, it is clear that the statement of the accused, offered as a self-incriminating confession, was one made under circumstances amounting to a *demand*—the antipode of a free and voluntary confession.

Here was a prisoner in custody and under the authority of the sheriff and his deputies.

He had been arrested by one of the deputies, handcuffed and brought to prison. He is sent for by this deputy a few days later, taken under the shadow of the standing gallows, to a room in the jail, and there confronted by this deputy, in the presence of the sheriff and two other deputies (one of them presumably the jailer) and told he must tell the truth in regard to the robbery.

It was an inquisitorial proceeding in which the deputy, who was doing the questioning, *assumed* that the three accused, then before him, were the guilty parties.

He demanded to know "*when they had robbed the store*, and *how often they had robbed it.*" And while it has been held that a prisoner's confession will not be rejected as evidence merely because it was made in answer to a question which assumed his guilt (Wharton's Crim. Ev., 9th Ed., Sec. 663), the answers, thus compelled, of the accused in the instant case, under the circumstances mentioned, can not be received without doing violence to the rule that confessions to be admissible must be free and voluntary.

The accused had not sent for the deputy to come to him; he had

given forth no intimation that he desired to see him, or to make a statement to him. There was lacking everything tending to show the making of a free and voluntary confession.

The only conceivable hypothesis upon which this conversation could legally have been admitted to the jury was that it was a free and voluntary confession on part of the defendant.

"The rule of law," says Greenleaf on Evidence, Sec. 219, * * * "demands that the confession shall have been made voluntary, without the appliances of hope or fear by any other person." And whether it was so made or not, is to be determined upon consideration of the age, situation and character of the person and *the circumstances under which it was made.* It must not be obtained by the exertion of any improper influence. 3 Russel on Crimes (6th Ed.), 478; Wharton's Crim. Ev, (9th Ed.), Sec. 673; 2 Taylor, Ev. (9th Ed.), Sec. 8722; State vs. Havelin, 6 An. 168; State vs. Nelson, 3 An. 497.

The circumstances, amounting to menace, at least calculated to produce fear, under which this accused was called upon to tell what he knew about the crime, must be held to be such as to have made his situation so full of perplexities and embarrassments as to deprive him of the character of free agent, and overthrows the implication that his reply to the deputy sheriff could have been the result of a purely voluntary mental act.

The mere fact that a confession is made to a police officer, or other official, while the accused is under arrest in or out of prison, or was drawn out by questions, does not, it is true, necessarily render the confession involuntary, but such imprisonment or interrogation, and the circumstances and surroundings of the accused at the time, should be taken into careful account in determining whether or not the statements of the prisoner were voluntary. Hopt vs. Utah, 110 U. S..574; Sparf vs. U. S., 156 U. S. 51, 55.

" The law," says Russell in his work on Crimes " can not measure the force of the influence used, or decide upon its effect upon the mind of the prisoner, and, therefore, excludes the declaration if any degree of influence has been exerted."

While the admissions or confessions of a prisoner, when voluntarily and freely made, have always ranked high in the scale of incriminatory evidence, extreme caution and care are to be observed in determining that they *are* free and voluntary—a principle firmly

embedded in both English and American jurisprudence.   And the rule is comprehensive enough to exclude manifestations of compulsion whether physical or moral, the resultant effect of which, upon the mind, is hope or fear, aptly described to be " an involuntary condition of mind."

With regard to the question of proof to show that a confession was or was not voluntary, the rule is not that in order to render a statement admissible the proof must be adequate to establish that it was voluntarily made; but it is that it must be sufficient to establish that *the making* of the statement was voluntary.   See Bram vs. U. S., 168 U. S. 532, 549.

Upon the broad ground that the making of the statement, sought in the instant case to be proven as the accused's confession of guilt, was not voluntary, but done under conditions of menace, or calculated to inspire fear, the conclusion is reached that there was reversible error in permitting it to go to the jury.

It is therefore ordered, adjudged and decreed that the sentence and judgment appealed from be annulled, avoided and reversed, and that the case be remanded for further proceedings according to law.