Argued 16 October, decided 17 December, 1907.

## STATE *v.* BLODGETT.

92 Pac. 820.

CRIMINAL LAW—CONFESSIONS—ADMISSIBILITY—DETERMINATION OF COURT.

1. On the offer of a confession of accused, the court must determine whether it was made under the influence of hope or fear. This inquiry is preliminary to the admission of the evidence, and is addressed entirely to the judge.

REVIEW.

2. The determination of the court that a confession of accused was obtained without the influence of hope or fear will not be disturbed on review, unless there is clear and manifest error.

TRIAL—RULINGS ON EVIDENCE—STRIKING OUT.

3. The rule that the court should refuse to strike out irrelevant and immaterial evidence, admitted without objection, does not apply where a question does not call for improper evidence, but the answer contains evidence which is objectionable, and where it is not responsive or is too much in detail or proves to be hearsay, in which case the proper practice is too move to strike it out and to have the jury directed not to consider it.

CONFESSIONS—ADMISSIBILITY.

4. A confession made to a public officer in answer to questions assuming accused's guilt, and while accused was imprisoned, is admissible, if voluntarily made, and there must be some accompanying circumstances calculated to produce fear to exclude it on the ground that it was produced by fear.

SAME.

5. Accused, after being warned by the district attorney to the effect that whatever he said would be used against him, and that he need not make any statement unless he desired to, made a confession in answer to questions which assumed his guilt. Accused was in custody at the time. There was nothing to show accompanying circumstances calculated to produce fear. *Held,* that the confession was properly received in evidence.

TRIAL—IMPROPER ARGUMENT OF DISTRICT ATTORNEY.

6. Improper remarks of the district attorney in his argument to the jury in a criminal case, to which no objection was made at the time, will not be considered on appeal.

CONTROLLING ARGUMENT OF COUNSEL—OBLIGATION OF COURT.

7. The court in a criminal case must keep the attorneys for the State and accused within the bounds of legitimate argument and promptly check either when they exceed it, and, when improper argument is made, the court, on objection being made, must act and admonish the jury not to consider it.

OBJECTIONS—SUFFICIENCY—ACTION OF COURT.

8. The court, on objection by the counsel for accused to the argument of the district attorney, stated that when accused's counsel came to address the jury he might challenge the correctness of the statements of the district attorney. The counsel subsequently objected to other remarks of the district attorney, and the court merely stated that the latter must confine his argument to the evidence. *Held,* that the action of the court was tantamount to overruling the objections to the argument, and, where accused's exceptions were included in the bill of exceptions, the matter was reviewable on appeal.

IMPROPER ARGUMENT—GROUND FOR REVERSAL.

9. The rule that it is error sufficient to reverse a conviction for the court to suffer counsel, against objection, to state facts not in evidence or to comment

on facts calculated to prejudice the jury, rests on the facts of each particular case as to what matters adverted to but not in evidence are pertinent to the issues, or what immaterial matters referred to may produce injury to the substantial rights of accused.

SAME.

10. It is improper for the district attorney in his argument to the jury in a homicide case to refer to another criminal, who had killed his wife, his mother-in-law, and father-in-law in the county where accused was being tried, or to what other criminals may have done, and how they accomplished their crimes and the defense they made.

SAME.

11. The refusal of the court to interfere, on objections being made to the improper argument of the district attorney in his argument to the jury in a homicide case, cannot be justified by the fact that accused's counsel had an opportunity to address the jury in reply, and might then refute the assertions of the district attorney.

PREJUDICIAL ERROR.

12. A criminal case should not be reversed because of improper argument of counsel, unless it appears that injury to the rights of accused resulted, which question will be determined by the issue involved and the state of the evidence.

CONFESSION—CONCLUSIVENESS.

13. A confession offered in evidence is not conclusive on accused, but he may disprove any statements therein, and the jury may give such weight to a confession as they deem proper on considering the circumstances connected therewith.

DRUNKENNESS—EXCUSE FOR CRIME.

14. Drunkenness does not excuse accused for a criminal case, but it may be considered by the jury in determining the purpose, motive, or intent with which he committed the crime, to fix the degree of guilt.

IMPROPER ARGUMENT OF COUNSEL.

15. Where, in a homicide case, there was evidence tending to show that accused, in consequence of drunkenness, was insane and deprived of the capacity for deliberation and premeditation essential to constitute murder in the first degree, the argument of the district attorney, in which he ridiculed the plea of insanity by stating the circumstances of other crimes committed in the same locality, for which the perpetrators suffered the extreme penalty of the law, was reversible error, where the court, notwithstanding the objections of accused, merely stated in its charge that the jury should disregard all matters that occurred during the trial that were not admitted in evidence.

SAME.

16. It was improper for the district attorney in a homicide case to discuss the general character of accused and comment on his failure to call witnesses from another State to sustain good character, where accused had not testified in his own behalf, nor offered witnesses to show good character.

From Multnomah: M. C. GEORGE, Judge.

The defendant, George L. Blodgett, was charged with the crime of murder in the first degree, tried and convicted; from the judgment entered thereon, he appeals.

REVERSED AND NEW TRIAL ORDERED.

For appellant there was a brief and an oral argument by *Mr. John A. Jeffrey.*

For respondent there was a brief and oral argument by *Mr. Gus C. Moser,* Deputy District Attorney.

MR. COMMISSIONER SLATER delivered the opinion.

1. The defendant by information of the district attorney was charged with the crime of murder in the first degree, alleged to have been committed in the City of Portland, March 23, 1906, by killing one Alice Minthorn, commonly known as Alice Gordon. He was subsequently tried and convicted on the charge, and from the judgment entered thereon he has appealed.

The first error assigned by defendant for a reversal of the judgment is the denial by the lower court of his motion to strike out the testimony of Julia Maxwell, who gave the details of a confession made by defendant wherein he admitted that he committed the act, and gave the surrounding circumstances of the commission of the offense. The grounds of the motion were that the purported confession was not voluntary, but was made under circumstances implying coercion. Preliminary to the introduction of the confession, the witness testified that she was present at the police station or city jail in Portland, on March 24, 1906, at about 11 o'clock in the forenoon, in the presence of Mr. Manning, district attorney, Detectives Vaughn and Hellyer, F. L. Perkins, a news reporter, and defendant, for the purpose of taking the statement of the defendant in shorthand, which she did; that, before the statement was made, Mr. Manning asked defendant if he was willing to make a voluntary statement, and he replied that he was; that Manning then told him if he did it would be used against him in the trial of the case, and that he need not do so unless he wanted to. Then, in response to questions propounded to him by the district attorney, defendant made the statement, which was taken in shorthand by the witness, read by her to the jury, and received in evidence. No objection to the admis-

sion of the confession was made prior to its being read to the jury by the witness from her notes, but upon the conclusion of the reading, defendant's counsel moved that all of the confession be stricken out for the reason that it was not voluntarily made. It is now contended on the part of the State that, the testimony having been received without objection, the motion to strike out comes too late.

2. On the offer of a confession, the court is to determine whether or not it was made under the influence of hope or fear. This inquiry is preliminary to the admission of the evidence, and is addressed entirely to the judge: *State* v. *Moran,* 15 Or. 265 (14 Pac. 419). And the determination of the court on a criminal trial that a confession was obtained from him without the influence of hope or 'fear exercised by a third person will not be disturbed on review, unless there is clear and manifest error: *State* v. *Rogoway,* 45 Or. 601 (78 Pac. 987, 81 Pac. 234).

3. It would seem, therefore, that if defendant should have any reason to claim that the alleged confession was involuntary, he should present his objection when the offer is made, and, before the conclusion of the preliminary hearing, offer such testimony, if he have any, to support his objection and to rebut that offered by 'the State, or, upon his failure to do so, be precluded from thereafter objecting. "A majority of the authorities hold that it is the duty of the court to refuse to strike out evidence, although irrelevant and immaterial, which has been admitted without objection at the time it was offered": 12 Cyc. 565. But there are manifest exceptions to this rule, as where a question does not apparently call for improper evidence, but the answer contains evidence which is inadmissible or objectionable; and where it is not responsive or is too much in detail, or proves to be hearsay, the proper practice is to move to strike it out and to have the jury directed not to consider it: 12 Cyc. 565.

4. The involuntary character of the confession here offered is said to arise not from some independent or disconnected act

of the district attorney or of the officers in charge of the prisoner, by which fear in the latter may have been induced, which acts may have been shown by preliminary proof, but from the substance and form of the confession itself, and hence could not be shown or passed upon by the court in advance of the statement of the confession. Assuming, but not deciding, that this case comes within the exception, and that the motion to strike out was available to the defendant notwithstanding the absence of any previous objection, the confession was clearly voluntary, and therefore admissible.

The basis of the objection is that the confession was made in response to peremptory and accusatory questions addressed to defendant by the district attorney, which destroyed its voluntary character. The most prominent and striking questions, and the replies, were in part as follows:

"Q. I want to know the true name of this girl you killed.
A. Her name is Alice—Alice Shoenberg, or such a name.
Q. How old a man are you?
A. Forty-two years old, 26th of last September.
Q. How old was this woman you killed?
A. She claimed to be 32 years old.
Q. Was she ever married, that you know of?
A. She married a man by the name of George Minthorn. * *
Q. How long did you know this girl you killed?
A. I met this girl a year ago last October, 1905, in Helmville, Mont.
Q. What was she doing when you met her?
A. She was performing and singing on the stage.
Q. What were you doing at that time?
A. I was running a saloon at Columbia Falls Cut-Off."

Following these questions, and in response to the question, "How did you happen to meet her?" defendant, without any apparent restraint, gives a free and frank statement not only of how he happened to meet the deceased, but also a history of their meretricious and unlawful cohabitation from that time, interspersed with their quarrels and encounters, to the time of the tragedy, which occurred in an upstairs room of a hotel in

Portland where deceased had been staying. At this point in the story he is asked by the district attorney, "How did you come to quarrel with her this last time?" in response to which he gives a minute circumstantial statement of what transpired between them during three or four days immediately preceding the killing, as well as of his drinking and visiting saloons that morning in company with a friend, Malloy. He concludes this recital by saying:

"Finally I says to him, 'I will be back in about 15 minutes. I am going up to the room, and I will be back.' 'I said, 'I am going to ask Alice to have a drink, and if she refuses I am going to kill her.' I went up, and I guess you know what happened.

Q. Now, what did happen?

A. They say I killed her, and I guess I did."

Then by a series of questions all the details of the killing were brought out. The foregoing will give a fair idea of how the confession was obtained and its form.

5. A confession is admissible when voluntarily made to a public officer, even though the prisoner be in custody of such officer, unless the confession be in some sense elicited by threats or promises (*State* v. *McDaniel,* 39 Or. 161: 65 Pac. 520); and a prisoner's confession will not be rejected as evidence, merely because it was made in answer to a question which assumed his guilt: Wharton, Crim. Ev. (9 ed.), §§ 662, 663; 12 Cyc. 468. Confinement or imprisonment is not in itself sufficient to justify the exclusion of a confession if it appears to have been voluntary and was not obtained by putting the prisoner in fear, or by promises: *Sparf* v. *United States,* 156 U. S. 51 (15 Sup. Ct. 273: 39 L. Ed. 343); *Wilson* v. *United States,* 162 U. S. 613 (16 Sup. Ct. 895: 40 L. Ed. 1090). So, then, there must be some accompanying circumstances calculated to produce fear, other than the mere fact that it was made in a prison where the prisoner was in legal custody, or that it was made to a public officer, or that it was made in answer to questions that assumed his guilt. There is no evidence of any such other circumstances here. The warning

given by the district attorney to the prisoner before he addressed any questions to him, to the effect that whatever he said would be used against him and that he need not make any statements unless he desired to, overthrows any possible inference of duress that might otherwise be drawn from the form and the manner of the questions afterwards put to the prisoner. And this fact distinguishes this case from such cases as *Bram* v. *United States,* 168 U. S. 532 (18 Sup. Ct. 183: 42 L. Ed. 568), where the court were divided upon the admissibility of the confession, and the cases of *State* v. *Auguste,* 50 La. Ann. 488 (23 South. 612), and *Parker* v. *State,* 46 Tex. Cr. R. 461 (80 S. W. 1008: 108 Am. St. Rep. 1021), cited by counsel for defendant in support of his contention. In the last case mentioned there was not only an absence of warning, but the defendant was apparently tricked into making inculpatory admissions by artfully propounded questions in the form of a cross-examination. No error was committed by overruling defendant's motion.

6. It is next insisted that the district attorney, when addressing the jury in the first argument, on behalf of the State, upon the merits of the case, abused the right of argument by adverting to matters not in evidence, and not proper to be considered, by reflecting and commenting upon defendant's general character, when the same was not in issue, by insinuating that defendant is guilty of other crimes, and by expressing his personal opinion that defendant's witnesses had committed perjury, all to the injury of his substantial rights and over his objections.

7. No attempt was made in this court to maintain the propriety of the objectionable remarks, but, on the contrary, it was contended that the alleged error was not properly before this court for consideration, and it was also expressly admitted by counsel for the State that, if it were here, there was perhaps sufficient in the record to justify a reversal. In the course of the opening argument to the jury for the State by the district attorney, there were frequent interruptions and objections made

by defendant's attorney to statements made by the former as not supported by the evidence, and as a consequence there was much wrangling between counsel which the court did little to suppress. A part only of the language objected to will be noticed. The district attorney, referring to defendant and deceased, said:

"Why, he knew her for years in Montana. He slept with her when he had a legitimate wife. He knew she cohabited with other men, and he knew he kept her in a house of prostitution because it could not be anything more than a house of prostitution; he kept her in a dance hall; he made her wear short skirts; and he made her sell drinks in those short skirts."

On objection being made by counsel for defendant that there was no evidence to support the last statement, the court ruled:

"In a case where the attorney is misstating the evidence, as you claim, and you have the right to follow him, there is no need of any exception."

The court further said:

"You may claim his statements are incorrect, and then the jury will be instructed in all these cases."

Whereupon counsel for defendant saved an exception to the refusal of the court to instruct the district attorney, to which the court said:

"The court will not undertake to settle what is in evidence; that is for the jury."

8. At another time in his argument, the district attorney made the statement: "Gentlemen of the jury, this man Malloy lied when he went on the stand, and you know it, and so do I." But no objection was made thereto at the time by defendant's attorney. Later on, the district attorney said:

"But this man who seeks every advantage, even beyond the law, every advantage imaginable that a defendant could reasonably expect under and by virtue of the law, he has; even then he asks you to go beyond the law; he asks you to go beyond the law in this: He asks you to not say by your verdict that he is guilty of murder in the first degree. Why? Because he wants to live on. That man wants to live on. I ask you, gen-

tlemen, if he is of that character of individual manhood that ought to be permitted to live on? I ask you if the mere fact of taking a human life by the hands of a mere animal like that in a community civilized as we are, if he is a man—I repeat it again—who ought to live on? No; far from it. Gentlemen of the jury, we have in the penitentiary plenty of men of his ilk to make stoves for us. But the gallows wants him, and I demand at your hands that justice, full and fair, shall be meted out to this man as he deserves, owing to the crime he has committed and the charge which he is now facing. Why, gentlemen of the jury, if you say by your verdict this man should not be hung, why should I stand here before you and ask at your hands that this man suffer the penalty of death upon the gallows? I ask why? Simply because it is the duty imposed upon me by virtue of my office, and I am doing it honestly, just as I expect you, gentlemen of the jury, to do it, and it is there upon the statute books, and until it is obliterated from the statute books it is incumbent upon you, gentlemen of the jury, and when a man comes before you twelve men who are sitting here to try this case fairly and impartially, and tells you he did it, then, in the name of God, what should he expect? He tells you he committed this murder, tells you he shot this woman four times and kills her, and the police officers tell you he is the coolest man they had ever seen in all their career with criminals, and yet the nerve of this great big man of Montana to ask and to expect twelve citizens of Oregon to save his neck under such circumstances. Why, how absurd it is, gentlemen of the jury. We would not save the neck of a citizen whom we all knew under such circumstances, who resided here with us for years and years, let alone a man who comes into a strange State and seeks to do his crime in another State, where he figures he does not leave as much disgrace upon the people he leaves behind him, as he would if he committed it at his home, in his own state. Why, what a farce this justice of ours would be in the State of Oregon, and what a shame and disgrace it would bring upon our State, if we were to allow this man the privilege of a penitentiary sentence. Why, think of this man that went down here and killed his wife, his mother-in-law, and his father-in-law—

Mr. Lord: If your honor pleases, I object.

Mr. Manning: Gentlemen of the jury, just think of—

Mr. Lord: I object to that.

50 OR. ——22

Mr. Manning: Think of that. He was tried by me and before his honor—

Mr. Lord: I except to the remark, if your honor please.

Mr. Manning: I ask you, gentlemen of the jury, to think of all these atrocious crimes—

Mr. Lord: I object. One moment, Mr. Manning.

The Court: One moment.

Mr. Manning: If this man don't permit me to address the jury, I won't get through today.

The Court: References to other cases not in evidence when objected to, are not permissible.

Mr. Manning: I understand.

Mr. Lord: He has no right to comment upon other crimes, to try to inflame the minds of the jurors that way, and I except to it, and desire your honor to instruct the jury to disregard it.

Mr. Manning: I will comment upon it in a way.

Mr. Lord: And I note an exception.

The Court: Counsel, of course, should confine himself to inferences from the testimony.

Mr. Manning: That would be applicable in commenting on this case; yes, sir. I want you to just go with me a minute, if you please, back to the time when Wade and Dalton came to the State of Oregon, gentlemen of the jury—go with me right over there across the Willamette River to the home of the—

Mr. Lord: If your honor pleases, I object to that.

Mr. Manning: —of the family that lost their son at the hands of Wade and Dalton.

Mr. Lord: I object to the comparison by the district attorney in this case, and desire an exception.

Mr. Manning: Yes. Well, did you ever try a lawsuit before?

Mr. Lord: I would not think that you had from the way you are performing. If your honor pleases, I object to the remarks made by the district attorney in comparing this defendant with other defendants in cases which are within the minds and memories of the jury. Judge McBride has made a ruling upon that point, and I think your honor has, and I know that several other judges have. It is improper, it is unjust to the defendant, making an odious comparison which he has no right to make.

Mr. Manning: Yes.

The Court: Well, the argument of counsel should be confined to the evidence.

Mr. Manning:  I am going to make this comparison.

Mr. Lord:  Well, then, I except to the statement; I object to it—

Mr. Manning:  You can except to it all you want to.

Mr. Lord:  And your honor will allow an exception?

The Court:  Note an exception, Mr. Reporter.

Mr. Manning:  I told you a minute ago, I called your attention particularly to Wade and Dalton; I am going to do it again.

Mr. Lord:  And I except, your honor.

Mr. Manning:  They came over on the east side of the river and undertook to hold up one of the nicest young men we had in this town, and they shot him purely accidentally.  I tried the case against them; they shot him purely accidentally.  But supposing, gentlemen of the jury, they had said they were both intoxicated that night, that 'we were intoxicated and we didn't know what we were doing; we killed this man, but killed him under a different statute than this man killed this woman under'; they killed him under that statute where, if you commit murder in an attempt to commit arson or robbery, then the crime should be murder in the first degree.  But suppose that they had come into court and undertook to justify by saying they were drunk, and found twelve citizens of Multnomah County that would have said, 'Those are two nice, decent-looking young fellows,' and they say they were—Wade wasn't twenty-one years old until the day after he was hung—'they were nice-appearing boys.'  They walked right into this court-room, gentlemen of the jury, and they said, 'We did it, and we had no right to do it,' and I admired them, and if it had not been for George Chamberlain—Governor Chamberlain—I would have saved one of them.  Gentlemen of the jury, they had the manhood and the nerve; but this contemptible, cowardly man from Montana, he had the nerve, the awful nerve, the gigantic power to walk up those stairs to where a defenseless prostitute was, who was no better than himself, and kill her.  Why?  Because she refused to live with him.  Gentlemen of the jury, I would rather acquit a man who went out here on the public highway and held you up at the point of a revolver and took your property from you than I would to say that under any circumstances imaginable—draw on your imagination as best you can—that a case of this kind would be justifiable because of liquor or insanity.  Where is this insanity dodge?  Gentlemen of the jury, it is always to be found in a coward.  And more especially is he a coward when he says

the woman did it. The woman did it? Adam? You remember this Adam—I will call him Adam from Montana—Adam pointed his finger, and he says, 'Eve did it'; 'the woman broke up my home, gentlemen of the jury; she made a tramp and a bum of me; she forced me to go up into that room and kill her.' Why, gentlemen of the jury, what must this man, Mr. Lord, think you twelve men are? What must he think you twelve men are, and what must this coward think you twelve men would be if you were to save his neck?"

And again, at a later period of his address, he proceeded to state to the jury:

"Gentlemen of the jury, I don't want to say anything derogatory to the character of his former wife. Far from it. I don't want to say that she ought not to be here. Perhaps she feels it in her heart that she should be here; perhaps she feels it her duty to be here; but, gentlemen of the jury, I want you to eliminate the former Mrs. Blodgett from your minds absolutely and forever; because she only shows that weakness which you find in many, many good women. I would venture the assertion, gentlemen of the jury, if she would only unfold a tale of her life while she lived with Blodgett, there would not be many among you that would hesitate in finding a verdict against this man of murder in the first degree. Gentlemen of the jury, there never has been a single thing in that man's life,—I know it for this reason, if that man had a character of any kind imaginable, there would have been men here from Montana to say it was good. That is the first defense that a murderer always puts up—good character. Where is this man's character? You have it. You have it, gentlemen of the jury. You know what it is; that is, so far as this case you are trying is concerned.

Mr. Lord: Wait a minute. I object to that, and I take an exception to the district attorney's remarks.

Mr. Manning: You know this man is a murderer.

Mr. Lord: One moment.

The Court: One moment; one moment.

Mr. Manning: Oh, my!

Mr. Lord: Well, if you knew a little more and talked a little less you would say less 'Oh, mys'!

Mr. Manning: Well, go ahead.

Mr. Lord: If your honor pleases, counsel knows—I know he does—that he has no right to comment upon the character of the defendant. The character is not in issue.

Mr. Manning: Character is always in issue, if you want to put it in issue.

Mr. Lord: I except to the remarks of the district attorney.

Mr. Manning: So I say, gentlemen of the jury, that you have his character. Now, I ask you, is it good or bad? That is all I want you to say. Is it good or bad? Is the man who never did anything but run a dance hall and engage prostitutes, is that kind of a man, gentlemen of the jury, to be excused from a crime of this character? No."

The language first excepted to will not be considered at length, as the substance thereof is fairly to be inferred from the evidence, but it is there stated for the purpose of noting the attitude of the court towards defendant's objections and its reasons therefor, which becomes material in the discussion of the case to follow. The language to which the second objection is now made cannot be considered, because no objection was made at the time, and hence there was no judicial error on the part of the lower court in that regard: *Watson* v. *Southern Oregon Co.* 39 Or. 481 (65 Pac. 985). The third portion of the district attorney's argument above set forth is stated at considerable length to show what was the real issue discussed, and the application made by the district attorney of the language to which specific objection was made, viz., "Why, think of this man that went down here and killed his wife, his mother-in-law, and his father-in-law," and the subsequent references made by him to the Wade and Dalton case.

9. But first it is argued by the State that no ruling was made by the court on defendant's objections, and no exception was taken or allowed to a ruling of the court, and therefore, the question sought to be raised is not before this court. As to the court not having ruled upon the objections, it is apparent from what occurred and was said by the court upon defendant's first interruption that the question was considered by the court as having been once passed upon, and a ruling made to the effect and purport that counsel, when he comes to address the jury, might challenge the correctness of the statements of the district attorney as to what was or was not in evidence,

and that it was for the jury to decide. This, taken in connection with the subsequent demeanor of the court, was tantamount to overruling defendant's objections and equivalent to permission to the district attorney to continue in his line of argument notwithstanding defendant's objections, which he did without restraint. It was the duty of defendant's counsel to present his objection to the court at the time, and press it to a decision and save his exceptions. This he did, and that is all the law requires of him, and when his exceptions are included in the bill of exceptions signed by the court it is an allowance thereof.

But the court seems to have misconceived its duty, which was to keep the attorneys, both for the State and defendant, within the bounds of legitimate argument, and to promptly check either when they exceeded it: *People* v. *Lange,* 90 Mich. 454 (51 N. W. 534). The judge does not sit upon the bench as a silent and passive spectator of what is going on, but sits to administer the law and guide the proceedings before him: *State* v. *Robertson,* 86 N. C. 628.

When the party who is injured by the wrong calls for the intervention of the court by an objection, it will not do for the court to remain silent, leaving the matter of misconduct with the offending party and the jury. The court is bound to interpose when so called upon, and, if an improper and injurious statement has been made without excuse, the effect of it should be erased from the minds of the jury, then and there, by an emphatic and explicit admonition from the court: *Nelson* v. *Welch,* 115 Ind. 270 (16 N. E. 634, 17 N. E. 569). It may be said with equal propriety that the district attorney, although charged with the duty of prosecuting the defendant, has an equal responsibility with the court in seeing that the defendant has a fair and impartial trial. The evidence offered should be legal and pertinent, fairly and impartially .stated to the jury, and the deductions and arguments therefrom legitimate and candid. If in the prosecution it should happen, by inadvertent or hasty expression or otherwise, that improper and

injurious statements are made to the jury, it is the duty of the offending party to make it appear by the record that nothing reasonably proper to be done was omitted in order to rectify the wrong and restore to the trial the fairness of which he presumably divested it: *Nelson* v. *Welch,* 115 Ind. 270 (16 N. E. 634, 17 N. E. 569). The taking of an exception by defendant and its incorporation into the bill of exceptions preserved his rights, and the matter is properly before the court for our consideration. "It is a well-established rule that it is error sufficient to reverse a judgment for the court to suffer counsel, against objection, to state facts pertinent to the issue and not in evidence, or to comment upon facts calculated to prejudice, which have no bearing whatever upon the issues, and evidence of which would have been ruled out, or to assume *arguendo* such facts to be in the case when they are not" : 2 Enc. Pl. & Pr. 729. While this states the general rule, yet it must finally rest upon the facts of each particular case as to what matters adverted to but not in evidence are pertinent to the issues, or what immaterial matters referred to may produce injury to the substantial rights of the defendant.

10. It needs no extended consideration or citation of authority to establish that the references made in this case by the district attorney to some other criminal who, it was said, had killed his wife, his mother-in-law and his father-in-law in the county where defendant was being tried, or to what Wade and Dalton, other criminals, may have done, and how they accomplished their nefarious crime, and what manner of defense they made to the charge of murder, could have no legitimate bearing on the guilt or innocence or the degree of guilt of this defendant. It is manifestly obvious that reference to such matters was highly improper. Mr. Justice HEAD, in *Dollar* v. *State,* 99 Ala. 236 (13 South. 575), says:

"But there should be a limit placed upon this license. * * . We do not mean to say that the solicitor may not comment upon the evils generally of the crime which the law he is seeking to enforce intends to prevent, but he goes beyond this when

he gratuitously states to the jury, as a fact, the existence of particular evils in the locality of the defendant's offense, and to which that offense is supposed by him to be related."

11. Nor is the refusal of the court to interfere justified by the fact that the defendant, who is objecting, has an opportunity to address the jury in reply, and may then refute the assertions of the State's attorney. Questions of this kind generally arise out of the closing arguments, but the rule is the same at whatever stage of the case the improper language is used: 2 Enc. Pl. & Pr. 730. If it was proper to present these things to and comment on them before the jury, it was proper for the jury to consider them in making up their verdict, and, if it was proper for them to be considered by the jury, they would be and should have been admitted in evidence, but no one, we apprehend, will contend for a moment that such matters are admissible.

12. But a case should not be reversed where improper references have been made by counsel in their argument to immaterial and irrelevant matters, unless it further appears that injury to the rights of defendant resulted, and that will be determined by the issue involved and the state of the evidence.

13. Although the confession of defendant, which was properly received in evidence, admitted not only the fact of the killing, but also facts tending to show that the act was committed by him with such deliberation and premeditation as to constitute murder in the first degree, yet that is not conclusive upon defendant. "The accused is not estopped to deny and disprove the statements in his confession. He may show that when he confessed he was intoxicated, and may disprove by independent evidence of any sort any incriminating fact confessed by him. The rule that a confession is to be considered in its entirety does not compel the jury to give the same belief to every part of it. The jury may attach such credit to any part of it as they deem it worthy of, and may reject any portion of it which they do not believe. All of it must be carefully weighed by the jury, and upon all the circumstances sur-

rounding the case they must determine how much of it they will receive and how much of it they will reject": 12 Cyc. 484. The competency of the evidence is, however, for the court, while the weight and credibility of a confession as evidence are to be determined by the jury upon the same principles that they determine the weight and credibility of any evidence; that is, upon the consideration of all the circumstances connected therewith: 12 Cyc. 485. The defense attempted to be made was insanity, claimed to have been produced by excessive and prolonged drinking of intoxicants, which deprived the defendant of the capacity of deliberation and premeditation, necessary to constitute murder in the first degree, and reduced the crime at least to murder in the second degree, and from which intoxication or the effects thereof, it was claimed, at the time of making the confession, he had not fully recovered. From the tenor of that portion of the district attorney's argument found in the record, that seems to have been the main issue.

14. Drunkenness does not excuse the defendant in a criminal action, but may be considered by the jury in determining the purpose, motive or intent with which he committed the crime, in order to fix the degree of his guilt: *State* v. *Zorn,* 22 Or. 600 (30 Pac. 317); B. & C. Comp. § 1393. There was evidence tending to support this defense, and also that he did not, in fact, make to his friend Malloy the statement contained in his confession to the effect that he was going up to the deceased's room with an intent to kill her. So, instead of finding defendant guilty of murder in the first degree, as they did, the jury may have found him guilty in some lesser degree, according to the importance and degree of credibility they attached to the confession and to the testimony of different witnesses. Therefore, when the district attorney sought by argument and ridicule to show to the jury the absurdity of a plea of insanity in this case, by resorting to the facts and circumstances of other crimes committed in the same locality for which the perpetrators suffered the extreme penalty of the law,

all of which he stated to the jury, their minds must have been influenced against the defendant.

15. It is claimed by the State, however, that the possibility of prejudice in the minds of the jury, from the admitted improper and objectionable language, was counteracted and prevented, by the court instructing the jury as follows:

"In this case you will disregard all matters that occur during the trial that are not strictly admitted in evidence under the instructions of the order of the court, and the comments of counsel for the State wherein they may be based upon matters not in evidence, unless they do it by way of argument or inference, such as is natural to follow or adopt in your experience as the sole and exclusive judges of fact from matters of great public notoriety."

Very many abuses in argument may be sufficiently counteracted by the instructions of the court to the jury, and a large discretion as to the refusing of new trials because of such violations of propriety is accorded to the trial courts. The appellate court will frequently condemn the language or conduct of counsel, and at the same time affirm a judgment denying a new trial, on the ground that under all the circumstances the rights of the defeated party were not materially prejudiced, or that action of the trial court in the premises was effectual to restore to the proceedings the fairness of which they had been divested: 2 Enc. Pl. & Pr. 752. And this court in the case of *State* v. *Anderson,* 10 Or. 448, declined to reverse the case when the district attorney, while addressing the jury, commented upon the defendant's failure to take the witness stand in his own behalf, which this court says was certainly not proper. The defendant objected at the time and saved an exception. The trial court did not, at the time, rule on the right of the district attorney to make the remarks, but in the final charge to the jury instructed them that "no inference or assumption could be drawn by the jury from the omission of the defendant to testify."

That instruction was specific and directed to the correction of a possible injury, but the instruction in the present case is

general, and leaves it still to the jury to say whether reference has been made by counsel for the State to matters not in evidence, or whether counsel's argument is a natural or proper inference to be drawn from matters of assumed great public notoriety. The jury should be made to understand that in making the statement counsel violated the propriety of his position, and that if they did not wholly disregard it they would violate their duty as jurors: *Nelson* v. *Welch,* 115 Ind. 270 (16 N. E. 634). Moreover, in *State* v. *Anderson,* 10 Or. 448, the court say that: "The objectionable comments seem to have escaped the assistant district attorney in the heat of the argument, and not to have been repeated after the interposition of the appellant's objection; and the court was careful to charge the jury against any impression such comments might have left upon their minds." But they also say: "If a course of remarks of this kind had been persisted in on the part of the prosecution, under the permission of the court, and against the objections of the appellant, and exceptions properly taken, there is no doubt but the judgment must have been reversed." Now that is just what occurred in the present case. The defendant, notwithstanding the strenuous effort of his counsel in his behalf, during the progress of the trial, was at the mercy of the inactivity of the court, combined with the persistence of counsel for the State in rehearsing to the jury immaterial and prejudicial matters not in evidence, and to comment thereon and to draw inferences therefrom to defendant's evident disadvantage.

16. Equally unfortunate and improper was the discussion by the district attorney of the general character of the defendant, and his comment upon defendant's failure to call witnesses from Montana to sustain a good character. He had not testified in his own behalf or offered other witness to show a good character for himself. The prosecution cannot impeach the defendant's character unless he puts it in issue: Wharton, Crim. Ev. § 64. And in a criminal case, comments on the defendant's failure to adduce evidence of his good character, when the

latter has not been put in issue, has been held to be error not cured by subsequent instruction to the jury to disregard the comments. "The court should not have permitted such an argument," says Mr. Justice LONG, in *People* v. *Evans*, 72 Mich. 367 (40 N. W. 473); and for other authorities see footnote, 2 Enc. Pl. & Pr. 739.

Enough has been said to show the reason and necessity for a reversal of the judgment and the ordering of a new trial.

REVERSED.