Argued January 19, affirmed March 13, 1923.

# STATE *v.* POINTER ET AL.

(213 Pac. 621.)

**Indictment and Information—Time and Place of Every Alleged Fact to be Stated.**

1. An allegation of time and place should qualify, or be added to, every alleged fact in an information or indictment for felony.

**Indictment and Information—In Joint Indictment, Allegation of Joint Action is Unnecessary, and Surplusage.**

2. It is not necessary in a joint indictment to expressly allege that the defendants committed the offense jointly, or that they acted together, but it is sufficient to state that the defendants named did the acts that it is claimed constitute the offense which the indictment attempts to charge; hence a phrase in such an indictment, "acting jointly and together," is surplusage, failure to qualify which by the phrase "then and there" does not invalidate the indictment.

**Criminal Law—Testimony of Accomplice Held Sufficiently Corroborated.**

3. In larceny trial, testimony of accomplice *held* sufficiently corroborated to be admissible under Section 1540, Or. L.

**Criminal Law—Certified Copy of Record of Cattle Brand Held Admissible.**

4. Under Sections 9159, 9163, 9167, Or. L., a copy of the record of a cattle brand, certified by the state veterinarian, and in the possession of the county clerk, *held* as competent and effective as evidence as a like copy obtained directly from the veterinarian.

**Animals—Incumbent on Defendant to Show Change of Ownership Subsequent to Record of Brand.**

5. In prosecution for larceny of calf, an objection by defendant to evidence of a cattle brand record that the evidence of the recording several years before was too remote was untenable, in the absence of a showing, which it was incumbent upon defendant to make, that any change of ownership or right to use the brand had taken place subsequent to the date of recording the brand.

**Criminal Law—Mode of Curing Admission of Incompetent Testimony by Direction to Disregard Stated.**

6. In endeavoring to cure error in admitting incompetent testimony by direction to disregard, the court should specifically point out the testimony which the jury is directed to disregard; but, where one item of testimony against which a motion to strike is made is proper to be considered by the jury, such requirement is met by positive direction to the jury while the subject and the particular evidence under consideration are fresh in their minds that all the testimony against which objection is made is withdrawn from their

consideration, except the particular item which they are directed it is proper for them to consider.

**Criminal Law—In Absence of Exceptions and Request to Further Rebuke Prosecutor, Sufficiency of Instructions to Disregard Argument not Reviewable.**

7.  Where, after court's direction to jury to disregard improper statement in argument of special prosecutor, defendant's counsel did not except to the court's admonition, and did not request that the special prosecutor be further rebuked, or that a more definite or positive direction to disregard the statement be given the jury, the insufficiency of the admonition could not be complained of on appeal.

**Criminal Law—Improper Argument not Reviewable in Absence of Objection, Exception, or Request to Rule, and Where Statements Do not Appear in Bill of Exceptions.**

8.  Error could not be predicated upon statements of special prosecutor where the connection in which the statements were made did not appear from the bill of exceptions, no objection or exception thereto was made by defendant's counsel, and the court was not requested to rule concerning the same.

**Criminal Law—New Trial Discretionary, and Ruling Thereon not Reviewable Except for Abuse of Discretion.**

9.  Allowance of motion for new trial because of improper statements in argument by special prosecutor is discretionary with the trial court, and its action cannot be reversed on appeal except for manifest abuse of discretion.

**Criminal Law — Prosecution Should See That Defendant has Fair Trial.**

10.  It is the duty of the attorney for the state, whether the prosecuting attorney, or private counsel employed to assist that officer, to see that the defendant has a fair and impartial trial.

**Criminal Law—Prosecuting Attorney may Instruct as to Jury's Duty, but Should not Coerce Jury by Argument as to Public Disapproval of Acquittal.**

11.  In a criminal prosecution, an attorney for the state properly may appeal to the jury to perform their full duty in enforcing the law, and in so doing may advance any legitimate considerations likely to instruct the jury in the performance of their duty and of the importance of enforcing the law, and may make remarks illustrating the evil consequences that might result from their failure to perform their duty; but he may not indulge in argument calculated to arouse in them fears of public disapproval, or of being regarded recreant in their duty, and which on either account tends to coerce them into a verdict of conviction.

---

8.  Necessity and sufficiency of objection and exception to improper argument of counsel, see notes in 7 **Ann. Cas.** 229; **Ann. Cas.** 1916A, 551.

Criminal Law—Improper Argument not Reversible Error Unless Prejudicial.

12.   A case will not be reversed for improper argument of counsel unless it appears from the record that injury to the rights of defendant resulted.

From Jefferson: T. E. J. DUFFY, Judge.

Department 2.

AFFIRMED.

For appellant there was a brief over the names of *Mr. N. G. Wallace* and *Mr. Donald M. Graham,* with an oral argument by *Mr. Wallace.*

For respondent there was a brief over the names of *Mr. J. M. Devers,* Assistant Attorney General, *Mr. Bert C. Boylan,* District Attorney, and *Mr. Jay H. Upton,* with oral arguments by *Mr. Devers* and *Mr. Boylan.*

McCOURT, J.—Defendant and one Dale Pointer by an indictment were jointly accused of the crime of larceny of a calf, committed as follows:

"The said Tom Stevens and Dale Pointer on the 3rd day of November, A. D. 1920, in the County of Jefferson and State of Oregon then and there being and acting jointly and together, did, then and there, wrongfully, unlawfully and feloniouly take, steal and carry away a calf, the personal property of another, to-wit: Patrick Reilly."

Defendant had a separate trial, which resulted in a verdict of guilty. Defendant appeals from the judgment given and entered upon that verdict.

1. The first error assigned by defendant relates to the action of the court in overruling a demurrer to

12.   Misstatement of facts, or statement of facts not in evidence, by counsel in argument to jury, as ground for reversal, see notes in 9 Am. St. Rep. 559; 46 L. R. A. 641; L. R. A. 1918D, 4.

the indictment, the ground of which was that, the words of the indictment, "acting jointly and together," should be preceded by the words, "then and there," in order to comply with the rule of criminal pleading which requires that the allegation of time and place should qualify, or be added to, every alleged fact in an information or indictment for felony, as declared in *State* v. *Kelly,* 41 Or. 20 (68 Pac. 1).

2. It is not necessary in a joint indictment to expressly allege that the defendants committed the offense jointly, or that they acted together. It is sufficient to state that the defendants named did the acts that it is claimed constituted the offense which the indictment attempts to charge: 22 Cyc. 358; *State* v. *McPherson,* 30 S. D. 547, 572 (139 N. W. 368).

"Offenses jointly committed being in law several, such an allegation is equivalent to saying that each defendant did the criminal thing." 2 Bishop's New Criminal Procedure, § 471.

The phrase upon which defendant relies to invalidate the indictment properly may be rejected as surplusage, and no error was committed in overruling the demurrer.

A brief statement of the facts disclosed by the evidence will aid in disposing of the many errors which defendant claims were made by the court in the course of the trial.

Dale Pointer, jointly indicted with the defendant, having entered a plea of guilty, was called as a witness by the state. About the 1st of November, 1920, Pointer, an itinerant cow-puncher, arrived at the ranch occupied by the defendant, Tom Stephens, and his brother, Lovett, in Jefferson County, Oregon. He traded horses with Lovett, and stayed at the ranch all night. The following day he and the defendant took

a trip to the John Day River in a wagon and while on this trip, Pointer was employed by defendant to work at the ranch for his board and clothes and a little expense money.

Pointer testified that as they were riding along the road on their way home from the John Day River, they passed a Jersey cow that had an unbranded black calf, about three or four months old, at its side. Defendant said to Pointer: "That is a slick ear of Pat Reilly's. You come over in the morning and get him," to which Pointer replied, "All right." The next day Pointer went back after the calf, but by mistake got one of defendant's calves, which defendant turned out, and told Pointer he had better go back and get the right calf. Pointer then went back, found the cow that had been pointed out to him by defendant, roped the calf that was with her and tied it up and left it in what is known as Pine Creek Hollow. The cow was branded with the brand of Patrick Reilly, a cattle owner in the vicinity. On the afternoon of the next day—Election Day—defendant and Pointer on their way home from the polls left the road, went up in Pine Creek Hollow, where Pointer had previously hidden the calf, and attempted to lead and drive the calf home. It refused to be led or driven, so they tied it up again, defendant saying that they would come back in a couple of days when it would handle better. This they did, and took the calf to defendant's barn, which is located in a large field some distance from the public road. The calf was kept in defendant's barn for about three weeks, during which time the calf was castrated, and defendant requested Pointer to brand the calf, but he refused to do so.

106 Or.—38

Archie Telfer, a witness called by the state, testified that he saw Pointer and defendant in the afternoon of Election Day, leave the road and ride among a band of cattle in Pine Creek Hollow. Mrs. Randall and her daughter Lela each testified that on the same afternoon she saw Pointer and defendant struggling with the calf and attempting to drive or lead it out of Pine Creek Hollow.

That the Reilly calf was kept in defendant's barn for about three weeks and was later turned out in defendant's pasture, after which it disappeared entirely, was established by several witnesses for the state, and admitted by defendant.

Witnesses other than Pointer testified that in the same barn at the same time was another calf, belonging to Elvie Crowley, a neighbor owning a ranch near by; the Crowley calf also was castrated, and later, Crowley upon discovering where it was, with the express consent of defendant, took it away.

Shortly before the Crowley calf was taken from the Stephens' place, Pointer, hearing that a warrant was out for his arrest, left the vicinity. When Crowley a few days thereafter, accompanied by Randall and Telfer, came to the Stephens' barn, defendant intimated that Pointer was wholly responsible for placing both the calf of Crowley and that which it is claimed belonged to Reilly in defendant's barn, and defendant stated that Pointer, before leaving had said that the smaller calf belonged to Crowley and the larger one to Reilly.

Pointer left the defendant's place about the last of November, 1920, and upon January 26, 1921, defendant, having heard rumors that Reilly had accused him of stealing his calf, wrote a letter to Reilly in reference to the matter, in which he accused Pointer of stealing the calf, and later on April 28, 1921, de-

fendant wrote another letter to Reilly concerning the same matter.

Pointer returned some time in February, 1921, and appeared at the Reilly ranch. Reilly then showed Pointer Stephens' letter, and accused Pointer of stealing the calf. After some denial, Pointer admitted his participation in the theft, and offered to pay the value of the calf. Reilly refused this proposition, but gave him four days in which to return the calf. Thereupon Pointer telephoned to defendant that Reilly had given them four days to return the calf, or they would be arrested, and immediately defendant rode to the Reilly ranch, a distance of about twenty-five miles, told Reilly that Pointer had telephoned to him that Reilly had given them four days to return the calf, offered to pay for one half of the calf, and said: "That is more than the other fellow would do."

Defendant, as a witness on his own behalf, testified that he met Pointer at the polls on Election Day; that on the way back they looked over a bunch of cattle; that defendant left Pointer, who said he was going to the Smith place; that defendant worked around the farm for three or four or five days, then went to Shaniko, returning on the 10th or 11th of November. When he returned, the Crowley and Reilly calves were in the barn, whereupon defendant asked Pointer, "How come these calves in the barn?" Pointer replied that he put them in there, and that they were his. Defendant told him to turn them loose; that he did not want them there.

Defendant then went to the River, where he was gone two or three days. When he came back, Pointer still had the calves, and said that he was making a branding iron in the shop. Defendant told him to take them clear off the place. Pointer wanted to

trade the calf to him for a pair of silver-mounted spurs.

Pointer was gone when Crowley came; defendant told Crowley he could have his calf. Pointer had told him before he left, to give the smaller of the calves to Crowley, and that the bigger one belonged to Reilly. It was about a week after Pointer had turned the calves out that Crowley, Telfer and Randall came to see defendant. Pointer left because he was informed by defendant or some member of his household, that Crowley was coming after his calf, also that a warrant was out for his arrest.

Defendant admitted writing the letter of January 26th, in which he stated that Pointer had taken up the calf, and also the letter of April 28th, in which he stated that he had heard that Reilly intended to try to send him "over the road," and followed the same by counter-accusations and threats against Reilly. Defendant also admitted receiving a telephone call from Pointer, in response to which he came immediately from his place at the John Day River to Reilly's ranch. At that time he stated to Reilly, "I also heard you gave me and Pointer four days to return the calf," and said, " * * if I was into it I was willing to stand my share for it but I would not stand for what Mr. Pointer done."

Defendant did not turn the calves out of the barn, because he supposed that Pointer would turn them out when he told him to do so. Pointer wanted to brand the calves on two occasions. Defendant told him that he could not do so, and that he could not make a branding iron on the place. Defendant did not ask Pointer to whom the calves belonged, but knew that they were not his, and thought that he had stolen them. After Pointer telephoned, defendant went down to see Reilly the next day.

3. Defendant moved for a directed verdict, upon the ground that the testimony of Pointer, a confirmed accomplice, was not corroborated as required by the statute, Section 1540, Or. L. The foregoing recital of the evidence shows that there was corroboration of the testimony of the accomplice, sufficient to require a consideration of the whole case by the jury.

4. The court, over defendant's objection, permitted the state to introduce in evidence a copy of the record of the brand used by Patrick Reilly, which copy was certified to by the state veterinarian, in whose office the brand was recorded, as required by Section 9163, Or. L. The certified copy of the record so offered in evidence was the one furnished by the state veterinarian to the county clerk of Jefferson County, and kept by that officer in a loose-leaf ledger file, as required by the statute: Section 9159, Or. L.

Section 9167, Or. L., declares that the brand upon any animal shall be *prima facie* evidence that the animal belongs to the owner or owners of the brand, and provides as follows:

"Proof of the right of any person to use such brand shall be made by a copy of the record of the same, certified to by the state veterinarian in accordance with the provisions of this act."

Section 9159, Or. L., requires the state veterinarian to furnish to the county clerk of the respective counties a certified copy of all brands and marks used by stock growers and stock owners within such county, the same to be furnished each month for all brands and marks issued to stock growers and stock owners within the county during the month immediately preceding.

Defendant contends that the certified copy of the record of the brand in the office of the county clerk, furnished by the state veterinarian in compliance

with the statute, is not available as evidence in a criminal prosecution, but that a certified copy must be obtained from the state veterinarian.

The copy of the record of the brand, certified by the state veterinarian, and in the possession of the county clerk, was just as competent and effective as evidence, as a like copy obtained direct from the veterinarian.

5. If any change of ownership or right to use the brand had taken place subsequent to the date the brand was recorded, it was incumbent upon defendant to show such change. In the absence of any such showing, the, further objection made by defendant, that the evidence of the recording of the brand in 1917 was too remote, was without merit.

Over the objection and exception of defendant, the witness, Dale Pointer, was asked, and answered, the following question: "You may state whether or not during the time you were over in Wheeler County, Tom Stephens sent for you to come back." The witness answered the question in the affirmative. Defendant objected that the question was leading, and that the information sought to be elicited by the question was irrelevant, incompetent and immaterial.

It would require a detailed discussion to establish whether the information contained in the answer of the witness was material or relevant, or whether the question was leading. That is not necessary, as it is apparent from an examination of the record that no harm was done defendant by the question and the answer thereto.

Each of the witnesses, Dale Pointer and Patrick Reilly, was corroborated concerning a conversation between Reilly and Pointer, in which Reilly told Pointer that he would give the latter four days within which to return the calf Reilly claimed Pointer

had stolen from him. Each of the witnesses, when asked to relate the conversation, before testifying to the above statement, related that Reilly first accused Pointer of stealing the calf, which accusation Pointer denied, until Reilly showed him the letter of January 26, 1921, which Reilly had received from defendant; that after Pointer read that letter, he admitted taking the calf, and stated that he got it for defendant, and that he was willing to pay and settle for it. Counsel for defendant objected to all of the questions asked the witnesses relative to the conversation, upon the ground that the evidence of conversations between Pointer and Reilly, while defendant was absent, and long after the completion of the alleged conspiracy, was inadmissible.

When the witness Pointer had completed his testimony in relation to the conversation above stated, and again when Reilly had given his version of the same conversation, defendant interposed a motion to strike the testimony and withdraw it from the consideration of the jury. When the foregoing motion to strike was made respecting the testimony of Pointer, the court promptly directed the jury to disregard and erase from their minds all of the foregoing statements and conversation between Reilly and Pointer, except the statement that Reilly gave Pointer four days within which to return the calf, which statement the previous testimony disclosed was immediately communicated by Pointer to defendant, who at once responded by a visit to Reilly in relation thereto.

The court denied the motion to strike the statement thus communicated to defendant, but allowed the motion as to the remaining statements exchanged between Reilly and Pointer during the conversation. The court also denied a motion to declare a mistrial of the case, made by defendant at the same time.

When the motion to strike the testimony of Reilly was made, the court again directed the jury that all of the testimony against which the motion was directed was inadmissible, and should not be considered by the jury, except the statement wherein Reilly told Pointer that he would give him four days within which to return the calf. The court was emphatic and specific in its directions to the jury not to consider any of the testimony given of the conversation, except the testimony which the evidence showed had been communicated to the defendant, and upon which he had acted promptly, and the jury was vigorously admonished to strike and erase from their minds, all of the testimony, save that specified.

In its instructions to the jury, the court recalled the matter, and again positively directed the jury that they should not consider any part of that conversation, except the one statement that Reilly had given Pointer four days within which to return the calf.

6. Defendant claims that error committed by a trial court in the admission of incompetent testimony cannot be cured by directing the jury to disregard the same, unless the court recites to the jury the particular evidence which is withdrawn from their consideration, and that a like result cannot be accomplished by directing the jury that all of certain testimony of the witness is withdrawn from their consideration, except a particular portion specified by the court.

It is true that in endeavoring to so cure such error, it is the duty of the court to specifically point out the testimony which the jury is directed to disregard: *State* v. *Aiken*, 41 Or. 294 (69 Pac. 683); *State* v. *Blodgett*, 50 Or. 329, 347 (92 Pac. 820); *Suank* v. *Elwert*, 55 Or. 487 (105 Pac. 901); *State* v. *Rader*, 62

Or. 37 (124 Pac. 195); *State* v. *Goff,* 71 Or. 352 (142 Pac. 564).

But, where one item of testimony against which a motion to strike is made, is proper to be considered by the jury, the requirement of the foregoing cases is met by positive direction to the jury while the subject and the particular evidence under consideration are fresh in their minds, that all the testimony against which objection is made is withdrawn from their consideration, except the particular item which they are directed it is proper for them to consider. It is essential that the jury be made to understand clearly the particular testimony that is withdrawn from their consideration, and when it is made clear to them, the form of instruction employed by the court is not important.

In the instant case the court took great pains to make clear to the jury the testimony which they might not consider, and that which it was legitimate for them to consider. We think the jury clearly understood the directions given them, and that no error was committed.

Defendant assigns as error statements made to the jury in argument by special counsel for the state. Mr. J. H. Upton, special counsel assisting the prosecuting attorney in the trial, in the course of his address to the jury, appealed to the jury to perform their duty in the case upon trial, and alluding to the failure of the state to secure conviction in other cases similar to the one on trial, said:

"It is a shame and a disgrace the way the juries of Jefferson County have conducted themselves in the last three years."

7. Counsel for defendant interrupted the argument, and objected to the language used by the special pros-

ecutor, and requested the court to withdraw the remarks of counsel from the jury and to instruct them to disregard the same, and also requested the court to confine counsel to a proper discussion of the evidence. In response to the objection and requests of defendant, the court in substance instructed the jury that such statements should not be made, and that the argument of counsel for the state should be confined to summing up the evidence for the benefit of the jury; and further expressly directed the jury to disregard the ·statement to which defendant objected.

Counsel for defendant, so far as the record discloses, at the time regarded the instruction of the court as sufficiently responsive to his objection and requests; he did not except to the admonition given by the court, and did not request that the special prosecutor be further rebuked, or that a more definite or positive direction to disregard the statement be given the jury; in the absence of such exception or requests, the ·court violated no duty to the defendant.

Further in the progress of this argument, Mr. Upton, addressing the jury, made the following statements:

"It is not fair to come here as so many Jefferson County Juries have done and sit and listen to this testimony with your minds made up right from the first that you will not convict the defendant."

And still later in his argument, Mr. Upton said:

"If you believe him guilty make up your mind to-day and not say a week or two from now as some of these jurors have done, 'Well, I knew he was guilty all the time, but I did not understand some little thing or other,' that does not amount to anything."

8. The connection in which the last two statements were made, does not appear from the bill of exceptions; no objection or exception thereto was made by

counsel for the defendant, and the court was not requested to rule concerning the same. Therefore no error can be predicated thereon: *State* v. *Lee Ping Bow,* 10 Or. 27; *State* v. *Anderson,* 10 Or. 456; *State* v. *Abrams,* 11 Or. 169 (8 Pac. 327); *State* v. *Drake,* 11 Or. 396 (4 Pac. 1204); *State* v. *Hatcher,* 29 Or. 309 (44 Pac. 584); *State* v. *Young,* 52 Or. 227 (96 Pac. 1067, 132 Am. St. Rep. 689, 18 L. R. A. (N. S.) 688); *State* v. *Morris,* 83 Or. 429, 436 (163 Pac. 567); *State* v. *Kapsales,* 90 Or. 56, 58 (175 Pac. 433).

9. The foregoing statements of special counsel were made the basis of a motion for a new trial, by which, and its denial by the trial court, defendant insists that the question of the misconduct of the special prosecutor is before this court for decision. The allowance of the motion for a new trial was discretionary with the trial court, and its action cannot be reversed upon appeal, except for manifest abuse of discretion: *State* v. *Morris,* 58 Or. 397, 407 (114 Pac. 476).

10. It is the duty of the attorney for the state, whether the prosecuting attorney, or private counsel employed to assist that officer, to see that the defendant has a fair and impartial trial: *State* v. *Blodgett,* 50 Or. 329, 342 (92 Pac. 820); *People* v. *Fielding,* 158 N. Y. 542 (53 N. E. 497, 70 Am. St. Rep. 495, 46 L. R. A. 641).

11. In a criminal prosecution, an attorney for the state properly may appeal to the jury to perform their full duty in enforcing the law, and in so doing may advance any legitimate considerations likely to instruct the jury in the performance of their duty and of the importance of enforcing the law, and may make remarks illustrating the evil consequences that might result from their failure to perform their duty; but he may not indulge in argument, calculated to

arouse in them fears of public disapproval, or of being regarded recreant in their duty, and which on either account tends to coerce them into a verdict of conviction: 16 C. J. 910; 2 R. C. L. 416; *State* v. *Blackman,* 108 La. 121 (32 South. 334, 92 Am. St. Rep. 377).

The statements under discussion were made in the course of an extended address to the jury. The connection in which they were made does not appear from the record. They may have been much qualified by the argument with which they were introduced and by that which followed each of them. Only the statements of which complaint is made are before us, and it cannot be determined from such statements, separated from the context, whether the special prosecutor exceeded the limits of legitimate argument.

12. A case will not be reversed upon account of improper argument of counsel, unless it appears from the record that injury to the rights of defendant resulted: *State* v. *Blodgett, supra.* The entire argument of the special prosecutor, as well as the excerpts in question, was fresh in the mind of the trial court when passing upon the motion for a new trial. Thus qualified to decide the matter, the court determined that the rights of defendant were not prejudiced by the conduct of counsel. We cannot say that the decision overruling the motion for a new trial was an abuse of discretion.

This disposes of all the assignments of error discussed by defendant in his brief and at the argument of the cause. A careful examination of the entire record in relation to numerous assignments of error mentioned but not discussed in the brief or upon oral argument, discloses for the most part that such assignments refer to the admission of unimportant testimony which did not in any manner influence the verdict of the jury.

If any of the assignments present error, the same was harmless.

It follows that the judgment of the Circuit Court is affirmed.                                    AFFIRMED.

McBRIDE, C. J., and BEAN and BROWN, JJ., concur.