(December 6, 1898.)

## COUNTY OF BINGHAM v. WOODIN.

[55 Pac. 662.]

PLEADING.—Where the complaint fails to set forth a material fact. essential to the establishment of plaintiff's right to recover, the complaint is bad on general demurrer.

COUNTY ASSESSOR AND TAX COLLECTOR—DEPOSITED ON GENERAL DEPOSIT.—C., as assessor and tax collector for the county, paid into the bank of B. & Co. a sum of money collected by him as such official, and subsequently gave to W., the outgoing treasurer of said county, a check for $50,539.03, and the cashier of said bank, without the knowledge or consent of the incoming treasurer,. passed a portion of said amount to the credit of the incoming treasurer; *held,* that this did not constitute "a deposit on general deposit" by such incoming treasurer.

EVIDENCE, DOCUMENTARY.—In an action on treasurer's bond the plaintiff was permitted, over the objection of defendants, to introduce the ledger of a banking company and to read in evidence certain entries therefrom, there being no proof as to who made the entries or when they were made, or that the treasurer had any knowledge of or ever consented to such entries. *Held,* error.

(Syllabus by the court.)

APPEAL from District Court, Bingham County.

Alfred A. Fraser and Chalmers & Ryan, for Appellants.

The demurrer to the amended complaint should have been. sustained because there is no breach of the bond, or the official duty of said defendant Woodin alleged. (*Murback v. State,* 34 Ind. 301; *Bocard v. State,* 79 Ind. 279; *State v. Hebel,* 72 Ind. 361; *State v. Thomas,* 17 Mo. 503; *Supervisors of Franklin v. Kirby,* 25 Wis. 498.) The court erred in admitting in evidence page 442 of the general ledger of the bank of C. Bunting & Co. over the objection of defendants, because there is no evidence that it was a book of original entries, in which the party offering it kept his accounts in the regular course of his business. There is no evidence that the entries therein were made by him at the times they purport to have been so made, and contemporaneous with the transactions which they chron-

icled.   (*Farrington v. Tucker,* 7 Colo. 557; *Hooker v. Johnson,* 6 Fla. 730; *Bower v. Smith,* 8 Ga. 74; *Kibbe v. Bancroft,* 77 Ill. 18; *Rice v. Hodge,* 26 Kan. 164; *Tomlinson v. Borst,* 30 Barb. (N. Y.) 42; 2 Am. & Eng. Ency. of Law, 467; *Chaffee v. United States,* 85 U. S. (18 Wall.) 516.)   The court should have excluded said bank-books, as the bank was not a party to this action, and the books of a stranger to the action cannot be admitted in evidence.   (*Watrous v. Cunningham,* 65 Cal. 410, 4 Pac. 408; *Kerns v. McKean,* 76 Cal. 87, 18 Pac. 122; *Willis Point Bank v. Bates,* 72 Tex. 137, 10 S. W. 348; *Barnes v. Simmons,* 27 Ill. 512, 81 Am. Dec. 248; *Minton v. Underwood Lumber Co.,* 79 Wis. 646, 48 N. W. 857; *Martin-Brown Co. v. Perrill,* 77 Tex. 199, 13 S. W. 975.)   A judgment which is not supported by the pleading is as fatally defective as one which is not sustained by the evidence.   (*Bachman v. Sepulveda,* 39 Cal. 688.)   The plaintiff cannot have a judgment in direct contradiction of the allegations of his complaint.   (*Von Drachenfels v. Doolittle,* 77 Cal. 295, 19 Pac. 518; *Sterling v. Hansen,* 1 Cal. 478.)   The plaintiff must recover, if at all, upon the cause of action set out in his complaint, and not upon some other which may be developed by the proofs.   (*Mondran v. Goux,* 41 Cal. 151; *Miller v. Hallock,* 9 Colo. 551, 13 Pac. 541; *Reed v. Norton,* 99 Cal. 617, 34 Pac. 333.)

R. E. McFarland and T. M. Stewart, for Respondent.

Where a check drawn upon a bank is presented to it by the holder for deposit to his credit, and the amount is credited to the holder, the legal effect is precisely the same as though the money were first paid out to him, and then by him deposited in the bank.   (Daniel on Negotiable Instruments, 1621; *Oddie v. National City Bank,* 45 N. Y. 735, 6 Am. Rep. 160.)   The giving of a check becomes, at least after presentment, an assignment to the holder of a sufficient amount of the deposit to pay the check, and therefore a definite appropriation of that sum to its payment, binding upon all the parties to the check.   (*Metropolitan Nat. Bank v. Jones,* 187 Ill. 634, 31 Am. St. Rep. 409, 27 N. E. 533; *American Exchange Nat. Bank. v. Gregg,* 138 Ill. 596, 32 Am. St. Rep. 173, 28 N. E. 839; *First*

*Nat. Bank v. Leach,* 52 N. Y. 350, 11 Am. Rep. 708.)   If, at the time the holder hands in the check, he demands to have it placed to his credit, and is informed that it shall be done, or if he holds any other species of conversation which practically amounts to demanding and receiving a promise of a transfer of credit as equivalent to an actual payment, the effect will be the same as if he had received his money in cash and the bank's indebtedness to him for the amount will be equally fixed and irrevocable.   (Morse on Banking, 321; *National Bank v. Burkhart,* 100 U. S. 686.)   Where, under authority from the county treasurer to a tax collector, who is also a bank cashier, to hold and disburse county funds, the latter reports the collection of funds to former and gives him a check therefor, and takes from the treasurer a receipt and the check to be deposited in the cashier's bank and to be paid out on county warrants, the treasurer is chargeable with the money and is estopped to deny its receipt as against the county.   (*Kempner v. Galveston Co.,* 76 Tex. 450, 13 S. W. 460; *Bush v. Johnson Co.,* 48 Neb. 1, 58 Am. St. Rep. 673, 66 N. W. 1023, 32 L. R. Ann. 223, 226; *Doll v. People,* 48 Ill. App. 418.)   The great weight of authority holds an officer liable for public moneys lost by bank failure.   (*State v. Moore,* 74 Mo. 413, 41 Am. Rep. 322; *Ward v. School Dist.,* 10 Neb. 293, 35 Am. Rep. 477; *Lowry v. Polk Co.,* 51 Iowa, 50, 33 Am. Rep. 114; *Omro Sup. v. Kaime,* 39 Wis. 468; *Inglis v. State,* 61 Ind. 212; *State v. Croft,* 24 Ark. 550; *Rose v. Douglass Tp.,* 52 Kan. 451, 39 Am. St. Rep. 354, 34 Pac. 1046; *Griffin v. Mississippi,* 71 Miss. 767, 15 South. 107; *Nason v. Directors,* 126 Pa. St. 445, 17 Atl. 616; *Bush v. Johnson Co.,* 48 Neb. 1, 58 Am. St. Rep. 673, 66 N. W. 1023, 32 L. R. Ann. 223.

HUSTON, J.—This is an action upon the bond of W. A. Woodin, the principal defendant, and the other defendants as his sureties upon the bond of said Woodin as treasurer of Bingham county.   Judgment was rendered by the district court against all of the defendants.   Motion for a new trial was made and overruled, and from the judgment and the order overruling motion for new trial this appeal is taken.

The amended complaint sets forth the official character of principal defendant; his election and qualification as such officer; the execution of the bond; and avers that said principal defendant now is the duly elected and qualified treasurer of the said county of Bingham.  The complaint then proceeds to set forth the first cause of action, as follows: "That on or about the fourteenth day of January, 1897, Squire G. Crowley had collected, as tax collector of the county of Bingham, and had and sought to pay to the treasurer of said county of Bingham, several sums of money, aggregating more than $48,719.03, of moneys belonging to said county of Bingham.  That the said defendant William A. Woodin did not on said day receive, and has not since or at all received, the said moneys, and did not demand the same in money, as in law he should have done, but in lieu thereof, and as payment of said moneys, he did receive and accept from said Crowley checks and credits on and in the bank of C. Bunting & Co., bankers, a corporation then doing business in the county of Bingham, aforesaid; which said corporation then was, ever since has been, and now is, insolvent, and unable to pay its liabilities as they matured.  That the aforesaid checks and credits were worthless, and did not enable the said defendant Woodin to receive the said moneys, or any part thereof, and the said moneys were lost to the plaintiff by the negligence of the said Woodin, treasurer as aforesaid, in not receiving the said moneys, to the damage of the said plaintiff in the sum of $48,719.03.  That said damage has not been paid, nor any part thereof.  For a second cause of action, plaintiff alleges: . . . . That on or about the fourteenth day of January, 1897, the said defendant Woodin, as such treasurer, did receive from Squire G. Crowley moneys belonging to the said county of Bingham in the sum of $48,719.03.  That said Woodin, as such treasurer, did not safely keep the said moneys, nor any part thereof, but did deposit the same on a general deposit in the bank of C. Bunting & Co., bankers, a corporation then doing business in the said county of Bingham; which said corporation then was, and ever since has been, and now is, insolvent, and unable to pay all its liabilities as they matured.  That the said money was never returned to the plaintiff or to

said treasurer, but was wholly lost to plaintiff, to its damage in the sum of $48,719.03. That said damage has not been paid, nor any part thereof." A copy of the bond is attached to, and made a part of, the complaint. To the amended complaint the defendants interposed a general demurrer to both causes of action stated; and also a special demurrer, on the ground that two causes of action had been improperly joined, and for ambiguity and uncertainty. The demurrers were overruled, and to such ruling exception was taken by defendants. Defendants then filed answer.

We think the demurrer to the first cause of action should have been sustained. It does not appear that any money was paid to the treasurer by Crowley. That Crowley, the assessor and tax collector, "had and sought to pay to the treasurer" certain sums of money, and in furtherance of that purpose had delivered to the treasurer certain worthless checks upon an insolvent bank, does not, we apprehend, constitute such a payment as would establish the liability of the treasurer or his sureties. Section 1842 of the Revised Statutes provides that "when any money is paid to the county treasurer he must give to the person paying the same a receipt therefor," etc. It is not alleged in the complaint that any receipt was given by the treasurer to Crowley for the checks and credits alleged to have been given by Crowley to him. It might reasonably be presumed from this fact that the treasurer had declined to receive such checks and credits as money.

The statement of the second cause of action is, we think, equally objectionable. It is one of the duties imposed upon the treasurer by law (see Rev. Stats., sec. 1840) to "receive all moneys belonging to the county, and all other moneys by law directed to be paid to him, safely keep the same, and apply and pay them out, rendering account thereof as required by law"; but there is no allegation in the complaint of any failure of this officer to "apply and pay out" the moneys paid to him as such officer, or to "render account thereof as required by law." He is still in office, and it is not alleged that any demand has been legally made upon him which has not been promptly met. The allegation that the treasurer "did deposit the same [i. e.,

the moneys alleged to have been received by him] on a general deposit in the bank of C. Bunting & Co.," etc., while it would be a proper and necessary averment in a charge, under the provisions of section 6975 of the Revised Statutes, against the treasurer, is not, we think, of itself sufficient in an action against the sureties. It might well occur that the officer could make such "general deposit," and yet the county or its treasury suffer no loss thereby, and in such case there would be no predicate for an action against the sureties. For such an act the law has made the officer personally liable. The liability of the sureties would depend upon the further fact that, by reason of such act of the officer, the county or its treasury has suffered loss, and these facts should be both alleged and proved. The second cause of action contains no such allegation. We think the demurrer to this cause of action should have been sustained.

Inasmuch as the judgment in this case will have to be reversed, and the cause remanded for a new trial, it becomes our duty, under the provisions of section 3818 of the Revised Statutes, to pass upon and determine all the questions of law involved in the case presented upon such appeal and necessary to the final determination of the case.

Plaintiff was permitted, over the objection of defendants, to introduce in evidence the ledger of C. Bunting & Co., and certain entries therein were allowed to be read without any proof of whom the entries were made by, or when they were made, or that Woodin had any knowledge of, or ever consented to, such entries. This was error. The facts in the case are substantially as follows, as developed by the record: It had been the custom, not only of the predecessors in office of the principal defendant, but of all of the officers of Bingham county handling the moneys of said county, to deposit the same in the bank of C. Bunting & Co., at Blackfoot, the county seat of said county—a custom which, though directly in violation of the provisions of the criminal laws of both the territory and the state, has been so persistently pursued that it would almost appear that said officials had concluded their convenience and opportunities were not to be "fobbed by old father antic, the law." In fact, they seem to look upon the law in this behalf as a "mere scarecrow."

The consequences involved in this case by such action on the part of officials are not novel or unprecedented in this state. The principal defendant herein took office on the eleventh day of January, 1897. He appointed as his deputy one Jenkins, who, it seems, had been the deputy of his immediate predecessor, and it may be for other of his predecessors. On the fourteenth day of January, 1897, one Squire G. Crowley, who had been assessor and tax collector for Bingham county for the two years next preceding, gave to said deputy, Jenkins, who was at the time, and for some years previous had been, the cashier of said C. Bunting & Co., bankers, a check drawn payable to G. G. Wright, the outgoing county treasurer of Bingham county, for the sum of $50,539.03, which amount was accredited to the account of said G. G. Wright, late county treasurer. Upon the adjustment of the account of said G. G. Wright with said bank, the said Jenkins, deputy and cashier, or somebody else, at some time, made an entry upon the books of said C. Bunting & Co. to the credit of William A. Woodin of the sum of $41,143.40. There is no date to this entry, nor does it appear by whom it was made, nor that it was made with the knowledge or consent of Woodin. Nor does the record show any check from Wright to Woodin for said sum or any other sum. Woodin testifies: "Mr. Crowley never paid to me, as treasurer of Bingham county, in checks, money, or any other representative of value, the sum of $41,143.40, and I never had any knowledge of that amount of money being paid into the treasury of Bingham county during my term of office." It would seem, then, from the record, that Crowley had paid into the bank the sum of money, to wit, $50,539.03, covered by the complaint; that he had checked against it to the full amount in favor of G. G. Wright, the outgoing treasurer; and that Jenkins, the cashier deputy, after balancing Wright's account, passed the balance to the credit of Woodin, or, at least, it may be presumed he did, although of the latter fact there is no direct evidence. There is no evidence, nor do we think it is pretended or claimed, that a dollar of money ever passed in any of these transactions.

The district court in its findings of fact pays but little re-

gard to the evidence. In its eighth finding the court says: "William A. Woodin, as treasurer aforesaid, did receive and accept from said Crowley checks and credits on and in the bank of C. Bunting & Co., bankers," etc. The evidence upon this point is that Crowley checked to Wright on the 14th of January, 1897, $50,539.03; and there is no evidence whatever connecting Woodin with Crowley in the matter, or that the transfer of this sum from Crowley to Wright, and from Wright to the credit of Woodin, was known to Woodin at the time. In its ninth finding of fact the court finds "that the aforesaid checks and credits were not worthless, but did enable the said defendant Woodin to receive said moneys, and the whole thereof, and none of the said moneys were lost to the said plaintiff by any negligence of the said Woodin in not receiving money, and the plaintiff was not damaged in any sum thereby." And in its tenth finding the court finds "that on the fourteenth day of January, 1897, said checks and credits were by the said treasurer duly presented to said bank and paid." None of these findings are supported by the evidence, and they are directly in conflict with the allegations of the complaint.

We are apprehensive that the honorable district court, in formulating findings in this case, got the rules and the matter of bankers commingled with the rules of law. The giving of a check by Crowley to, and the acceptance of the same by, Wright, might well operate as payment as between them; but the subsequent transfer upon the books of the bank of a much less sum to the credit of Woodin without his knowledge or consent would hardly operate, we think, as "a deposit upon general deposit," so as to make him amenable to the penalties of the criminal statutes or make him or his sureties liable civilly. The complaint avers that on the fourteenth day of January, 1897, the bank of C. Bunting & Co. "was, and ever since has been, and now is, insolvent, and unable to pay all its liabilities as they matured." C. E. Thum, a witness on the part of the plaintiff, testified: "That on the 14th of January, 1897, when the check for $50,539.03 was given, there was in the bank upon which it was drawn about $10,000—not to exceed $12,000. There were one or two days about that time when cash run to

a little over $12,000—about $12,200—but never over $13,000. I know this from my inspection of the cash-book as receiver. The entry of $50,539.03, on the credit side of the account of G. G. Wright as treasurer, on page 442 of the general ledger of the bank, on January 14, 1897, is the same check that was credited to the account of G. G. Wright, and there were not sufficient funds in the bank on that day to pay the check. I do not know upon what date the entry of $41,142.40 was made to the credit of W. A. Woodin as treasurer. I have examined the cash-book of C. Bunting & Co., bankers, and there was not at any time between the eleventh day of January, 1897, and the fifteenth day of February, 1897, sufficient funds in the bank of C. Bunting & Co., bankers, to pay the check for $41,142.40." It may be that, viewed from the standpoint of a banker, this condition of things is indicative of solvency; but to the ordinary mind it would, it seems to us, present an entirely different aspect. The finding of the court that Woodin, as treasurer, deposited on general deposit in the bank of C. Bunting & Co., bankers, the sum of $48,461.51, is not supported by the evidence.

The true facts of the case, as shown by the record, appear to us to be about as follows: Squire G. Crowley, as the assessor and tax collector of Bingham county, had at some time or times prior to January 14, 1897, deposited in the bank of C. Bunting & Co. the moneys collected by him as such officer. On said last-mentioned date he gave to G. G. Wright, the outgoing treasurer of said county, his check for the sum of $50,-539.03, and this check was by Wright presented to the bank, and by the bank placed to his credit; and it would appear that thereafter a certain sum ($41,142.40) was by some one, but by whom does not appear (but conceding that it was done by the cashier, Jenkins), placed to the credit of W. A. Woodin, treasurer. In making such entry, Jenkins was not acting as the deputy of Woodin. As the deputy of Woodin, Jenkins had nothing to do with the books of C. Bunting & Co. It would be an application of the doctrine of vicarious atonement unknown to the law, and unrecognized by it, to hold Woodin responsible for the acts of Bunting & Co.'s cashier, of which he

had no knowledge, and to which it does not appear he ever consented. If it is claimed that the acts of Jenkins, as cashier, were known to, and acquiesced in by, him as the deputy of Woodin, and hence become the acts of his principal, we answer that neither the agent nor the principal was authorized to do the act. If the making of the entry to the credit of Woodin was equivalent to a deposit of money on general deposit, as the district court holds, then it was a criminal act on the part of the deputy (if done by the deputy), and cannot bind the principal, unless done with his knowledge, consent, or by his direction. It was an act done outside of his authority as deputy. If the agent goes outside of the scope of his employment to commit a criminal act, the principal is not liable. (Mechem on Agency, sec. 745.)   But this act (the making of the entry, as before stated) was done by Jenkins as cashier, and his act as such cashier is relied upon to make the treasurer and his sureties responsible; and that, when it is not made to appear that the treasurer had any knowledge of the transaction or ever assented to it. That Woodin, upon the failure of the bank, attempted to protect the interests of the county by the institution of suit by, of, and under the direction of the chairman of the board of county commissioners of Bingham county, cannot be construed into an acknowledgment that he had knowingly violated the provisions of a criminal statute. That a condition such as we have before described should exist in this state is a thing to be deplored. That the public money, not only of the state, but of nearly, if not all, of the counties, cities, towns, and school districts of the state, should be openly and generally appropriated to banking purposes, for private gain, in the face of the most stringent laws prohibitory thereof, is iniquitous, and cannot but be productive of most disastrous results to the people. If the people of the state desire or are willing that the public moneys should be used in private banking and otherwise, let them see to it that proper laws are enacted to that end, which shall protect the interests of the public, and not, as now, by a tacit acquiescence in violations of the existing law, permit a practice of brigandage upon the public funds as destructive of the public credit and the public weal

as it is demoralizing to official character and destructive of personal integrity, and must inevitably result in financial disaster. Judgment of the district court is reversed, and cause remanded for further proceedings in accordance with this opinion; costs to appellant.

Sullivan, C. J., and Quarles, J., concur.

ON REHEARING.

(December 31, 1898.)

Per CURIAM.—The petition for a rehearing has been considered, and presents nothing but what was fully considered on the hearing of this case. No reason being presented for granting a rehearing, the same is denied.