258 P.2d 1147

**STATE v. SPENCER.**
No. 7872.

Supreme Court of Idaho.

June 24, 1953.

Swayne & McNichols, Orofino, for appellant.

Robert E. Smylie, Atty. Gen., J. R. Smead, Asst. Atty. Gen., Frank F. Kimble, Pros. Atty., Orofino, for respondent.

PORTER, Chief Justice.

On October 14, 1951, in Clearwater County, appellant shot and killed one Robert B. Kinzer. He was thereafter informed against for the crime of murder in the second degree. At the trial of the cause the jury brought in a verdict of guilty. Judgment of conviction was entered and a motion for new trial denied. Appellant appeals to this court from the judgment and from the order denying his motion for new trial.

Appellant is about 60 years of age. Since the year 1934 he has lived with his wife on a small ranch, having three or four acres of cleared land, located on Whiskey Creek about 10 miles from Orofino. In the early

morning of October 14, 1951, a neighbor of appellant telephoned the Sheriff of Clearwater County that appellant requested the sheriff to come to his home as a man had been shot. The sheriff testified that when he arrived at the Spencer home accompanied by Mr. and Mrs. Collins, he saw Mr. and Mrs. Spencer standing at the door of their home and the following took place:

"Q. What did you do then? A. I got out of the car. We spoke and I asked Mr. Spencer was this the place where the man was shot and he said it was, yes.

"Q. What else was said? A. I said, 'Is he alive?' and Mr. Spencer said, 'No, he is dead.' I said, 'Where is he?' and he said, 'Over in the clearing. I will show you.'

"Q. What did you do? A. Mr. Spencer led off, next I came, and Mr. Collins next.

"Q. Can you indicate on State's exhibit 1 toward what you went? A. Yes. We went towards that what is marked as log barn.

"Q. What was done or said then? A. Well, we went through some wooded country, started up, went through a draw, started up the other side, and I said how did he know where the body was and Mr. Spencer said, 'Well, I will tell you how it happened.' He turned around facing me. He said, 'I shot him.'

"Q. He said what? A. He said, 'I shot him.' He said 'I was asleep and two shots went through my bedroom. The dust and shavings fell in our face and I jumped out of bed, dressed and went to see if I could get those fellows to move farther down away from the buildings. Then when I came up to this fellow, I said, 'You shot two shots through my house. Did you know it?' and the fellow said, 'No, I didn't know it.' He has repeated this story very many times and it is hard for me to tell which words he said, which story he told.

\*    \*    \*    \*    \*    \*

"Q. Continue. A. Then Mr. Spencer said that Mr. Kinzer says, 'Don't you like it?' and Mr. Spencer said, 'No, I don't like it.' Mr. Kinzer said, 'Well, I just think I will shoot you' and Mr. Spencer said, 'I beat him to the shot.' "

The body of Robert Kinzer was found about 100 feet from the log barn or cabin. The body was removed and Mr. and Mrs. Spencer were taken by the sheriff to Orofino where appellant was lodged in jail.

At the trial appellant testified substantially as follows: That he and his wife were awakened about six o'clock a. m., by a number of shots fired by hunters and that two of such shots entered his bedroom. That he arose, went to his garage, secured his rifle from his Ford automobile and went to investigate the matter. That he saw two men in the vicinity of the log cabin which

is situated about 500 feet southwest of his home. That he found two sets of tracks east of his home. That after several minutes of investigation he saw an individual coming out from the west side of the log cabin. That appellant walked down to the basin near where the log cabin is situated and stopped. That the man kept walking toward appellant. That when they were about 50 feet apart appellant hailed him. That the man kept walking in appellant's direction and got up to within about 20 feet of appellant. As to the next events appellant testified:

"Q. Then what happened? A. I said, 'What are you guys shooting at? Did you know you shot through my house?'

"Q. What did he reply? A. He said, 'Don't you like it?'

"Q. What did you say? A. I said, 'No, I don't.'

"Q. Then what was done? A. He said, 'Damn you. I will shoot you.' He pulled the hammer back on his rifle."

Appellant further testified that the deceased was carrying his gun over his right arm. That he put his left thumb on the hammer and cocked the gun and started to swing the muzzle toward appellant. That appellant was carrying his gun in his right hand with the muzzle down. That appellant swung the muzzle of his gun up and shot deceased through the chest. That deceased was unknown to appellant. That he went to his house, sent his wife to see if there was anything she could do for the wounded man and then went to a neighbor's home and had him call the sheriff.

The record further shows that deceased, his brother and a third man were hunting deer in the vicinity at the time of the tragedy and had fired several shots.

The evidence on the part of the state consisted mainly of an attempt to show discrepancies in the story of appellant; and in particular, the state attemped to show that the two shots fired into the house of appellant were fired by appellant in an endeavor to manufacture evidence.

■ It having been determined that the judgment in this case must be reversed and the cause remanded for new trial, it is our duty in pursuance of section 1–205 I.C., to pass upon and determine all the questions of law involved in the case presented upon this appeal and necessary to the final determination of the case. County of Bingham v. Woodin, 6 Idaho 284, 55 P. 662.

On the day of trial but prior to the commencement thereof, the court called up appellant's motion to suppress certain evidence obtained by a search of appellant's home on the ground that such evidence was secured by an unlawful search and seizure. At the suggestion of counsel for the state that some time might be saved, the court did not pass upon such motion immediately but heard such motion and evidence in support thereof and in opposition thereto dur-

ing the course of the trial and before the admission of the questioned evidence. The hearing occupied the greater part of one day. Appellant contends that the court erred in delaying the hearing on such motion and also in denying the same.

It is the general rule as contended by appellant that a motion to suppress evidence should be made and determined prior to the trial of an action. The reason for the rule is that the trial court should not be required to stop during the course of a trial to determine such issue. State v. Conner, 59 Idaho 695, 89 P.2d 197; State v. Robinson, 71 Idaho 290, 230 P.2d 693. However, such rule is a limitation upon the right of the defendant to have such a motion heard and determined. No prejudice resulted to appellant because the court delayed hearing and determination of the motion to suppress evidence until during the course of the trial.

It is admitted that the home of appellant was searched without a search warrant. It was the contention of the state that appellant invited and consented to such search and would not be heard to complain that the search was illegal; which contention appellant challenged. The evidence on the point was conflicting. The court found adversely to appellant upon substantial evidence. Its finding will not be disturbed. Appellant having voluntarily submitted to the search, the evidence so obtained was admissible. State v. McLennan, 40 Idaho 286, 231 P. 718; State v. West, 42 Idaho 214, 245 P. 85; State v. Hagan, 47 Idaho 315, 274 P. 628; State v. Beach, 51 Idaho 183, 3 P.2d 539.

Appellant contends that the court erred in instructing the jury on the law of evidence, reasonable doubt and credibility of witnesses at the beginning of the trial and before any evidence had been adduced. Section R. 19–2101 I.C., reads in part as follows:

"Order of trial.—The jury having been impaneled and sworn, the trial must proceed in the following order:

\*   \*   \*   \*   \*   \*

"5. When the evidence is concluded, unless the case is submitted to the jury on either side, or on both sides, without argument, the prosecuting attorney or other counsel for the people must open, and the prosecuting attorney may conclude, the argument.

"6. The judge must then charge the jury if requested by either party; he may state the testimony and declare the law, but must not charge the jury in respect to matters of fact; such charge must be reduced to writing before it is given, unless by the mutual consent of the parties it is given orally."

Section R. 19–2102 I.C., is as follows:

"When order may be departed from. —When the state of the pleadings requires it, or in any other case for good reasons, and in the sound discretion

of the court, the order prescribed in the last section may be departed from."

■■ There is nothing in the record to invoke the discretion of the trial court and to justify a departure from the procedure outlined by the statute. Dunlap v. Savage, 54 Idaho 87, 29 P.2d 493; Byington v. Horton, 61 Idaho 389, 102 P.2d 652. However, there is nothing in the record or pointed out in appellant's brief indicating that appellant was in any way prejudiced by the action of the trial court. No objection was made by appellant to the procedure adopted. A departure from the order prescribed by statute is not reversible error in the absence of timely objection. Schmidt v. Williams, 34 Idaho 723, 203 P. 1075.

■ Appellant contends the court erred in limiting the cross-examination of state's witness, Herman Collins. Counsel for appellant was cross-examining the witness concerning admitted discrepancies between his testimony at the preliminary hearing and at the trial when the state objected that such was not proper cross-examination. The court ruled appellant must abandon such course of inquiry. The defendant should be allowed considerable latitude in the cross-examination of important witnesses in order to show bias or to test the credibility of such witnesses. State v. Jones, 62 Idaho 552, 113 P.2d 1106; State v. Barber, 13 Idaho 65, 88 P. 418. It was error for the trial court to restrict the cross-examination of the witness Collins as indicated. The questions being propounded were not such as to invoke section 9–1210 I.C., requiring that the transcript of the testimony at the preliminary hearing be shown to witness. People v. Hart, 153 Cal. 261, 94 P. 1042; People v. Mazzurco, 49 Cal.App. 275, 193 P. 164.

■ Appellant urges the court erred in refusing to grant defendant's motion to strike the State's Exhibits Nos. 21 and 24, being the rifles of deceased and of appellant, upon the ground that their condition had been substantially changed and altered. The alleged alteration of which appellant complains consisted of unloading the rifles by removing the shells therefrom. There is no merit in this contention of appellant. State v. Breyer, 40 Idaho 324, 232 P. 560; State v. Bush, 50 Idaho 166, 295 P. 432.

On the evening of October 15, 1951, a meeting was held in the office of the Prosecuting Attorney of Clearwater County at which were present Warren F. Gardner, prosecuting attorney, V. L. Holloway, sheriff, and Earl Morgan, special prosecutor in this case, and the appellant. In an adjoining room was Mrs. Schmale, who took down the conversation in shorthand, and also a wire recording machine, which recorded the conversation there had. The conversation consisted largely of questions by Mr. Morgan and answers by appellant. At the trial, the sheriff testified as to such conversation.

Upon cross-examination it developed that the sheriff had read the stenographer's tran-

script and had also heard played the wire recording. Appellant moved to strike out the sheriff's testimony as to such conversation on the ground that he had refreshed his memory by records of such conversation not made under his direction. Whereupon the state offered the wire recording of the conversation in evidence. The trial court announced that the motion to strike the testimony of the sheriff relative to such conversation would be granted and that the offer by the state of the wire recording in evidence would be granted and the recording read to the jury.

Thereupon counsel for appellant made a lengthy objection to the introduction in evidence of the wire recording, the principal part of such objection being that the evidence obtained at such meeting was obtained in violation of appellant's rights and was inadmissible. The objection in that regard was as follows:

"* * * secondly, it is in violation of the constitutional and statutory rights guaranteed the defendant, specifically, Article I, Section 13 of the constitution of the State of Idaho, being in violation of the constitutional provision providing that no person shall be compelled in any criminal case to be a witness against himself; three, upon the ground that it is in violation of the Federal Communications Statutes; four, the defendant was held in jail without formal charge for nearly four days; and on the further ground that the defendant had not been advised of his constitutional and statutory rights; on the further ground that the defendant was not under oath when the recording was made; and on the further ground that the defendant was not informed that a recording machine was being used and a stenographer was taking notes; * * *."

The court overruled appellant's objection and the wire recording was played to the jury. Appellant contends the court's action was error and cites State v. Kotthoff, 67 Idaho 319, 177 P.2d 474.

We are not concerned here with the necessity on the part of the state of proving that a confession was voluntarily made before the same is admissible in evidence. In this case the appellant's statements at the meeting in question were largely repetitions of the statements he had theretofore made to the sheriff and did not vary in any material respect from his former statements. His statements did not constitute a confession but at most might be construed as admissions against interest. State v. Stevens, 60 Mont. 390, 199 P. 256; People v. Ferdinand, 194 Cal. 555, 229 P. 341. There was no duty upon the state to put in proof of the voluntary nature of such admissions before the same became admissible in evidence. State v. Garney, 45 Idaho 768, 265 P. 668; State v. Wilson, 51 Idaho 659, 9 P.2d 497; People v. Camperlingo, 69 Cal.App. 466, 231 P. 601; Wilson v. State, 17 Okl.Cr. 47, 183 P. 613.

182

There is no hint in the record that such admissions were not voluntary or that there was any promise of immunity or reward or threat made to appellant. On the contrary, the record shows that appellant invited a full investigation by the Sheriff of Clearwater County and that at the trial he testified substantially to what he had admitted. State v. Behler, 65 Idaho 464, 146 P.2d 338.

It is true the record does not disclose that the spool and wire recording were marked for identification, thereafter identified and marked admitted in evidence. However, appellant is not in a position to urge this irregularity as error for the reason that the court advised counsel that the spool would not be placed in evidence and as to the procedure which the court was adopting and ask if there were any objection. No objection was made to such procedure by appellant.

Wire recordings are now generally recognized by courts and after having been properly identified are generally admitted in evidence. Williams v. State, Okl.Cr.App., 226 P.2d 989; Leeth v. State, Okl.Cr.App., 230 P.2d 942; People v. Hayes, 21 Cal.App.2d 320, 71 P.2d 321; People v. King, 101 Cal.App.2d 500, 225 P. 2d 950; State v. Perkins, 355 Mo. 851, 198 S.W.2d 704, 168 A.L.R. 920. The court did not commit error in admitting the wire recording in evidence and permitting the same to be played to the jury.

Appellant contends that the court erred in refusing to give his Requested Instruction No. 26 on the law of self-defense. The statements of law set out in such instruction were amply covered by other instructions given by the court and the court did not err in its refusal to give the instruction requested. State v. Rutten, 73 Idaho 25, 245 P.2d 778.

Appellant alleges misconduct on the part of the associate prosecuting attorney and cites the same as prejudicial error. The vital part of such assignment of error is as follows:

"(c) The associate prosecuting attorney in his closing argument deliberately and repeatedly referred to a horrible, gruesome and actual crime which had been committed in Clearwater County shortly before the shooting herein involved in which a young boy's body was found with the throat cut along a river bank (ff. 2383-2384) in order to inflame the minds and passions of the jurors who could not help but have known of a crime that received nation wide newspaper coverage and which had shocked the entire county.

"(d) The associate prosecuting attorney in his closing argument referred to the killing of five people since the jurors first took oath. This was a direct allusion to an actual occurrence happening at the boundary of Clearwater County on the very night prior to the beginning of this trial in order to inflame the minds and passions of the jury against the defendant (f. 2437).

"(e) The associate prosecuting attorney stated in his closing argument that the jurors would have to, 'Run the gauntlet of your friends when you get to the street if you free the defendant', and that they would be, 'afraid to listen to your radio and read your newspapers.' Which statement sought to improperly impress the jury to determine the case on factors outside the evidence (f. 2437).

"(f) The associate prosecuting attorney misstated the clear evidence in his closing argument in that he stated, 'How quick he (defendant) was to get his prints on here (on the gun) and later on said he never had his hands on the gun' (f. 2349), which statement is contrary to the evidence as disclosed by the record.

"(g) The associate prosecuting attorney in this final argument dwelt at length with the contents of the log cabin though the evidence concerning such contents had been ruled inadmissable by the court. Over objection of the defense, State's attorney informed the jury that he and the county officers knew the contents of the cabin and then set out an argument to the jury that the protection of the secret of the cabin was the motive of the shooting, all of which was based on excluded evidence, a statement of knowledge of the State's attorney himself, but not in evidence, and an inference not founded in evidence admitted at the trial but founded on private information of the State's attorney."

The only alleged misconduct on the part of the associate prosecuting attorney to which objection was made was the conduct set out in paragraph (g) above, upon which objection there was no direct ruling by the court.

■ It is the duty of a prosecuting attorney to see that the accused has a fair and impartial trial. State v. Bush, supra; State v. Irwin, 9 Idaho 35, 71 P. 608, 60 L.R.A. 716; State v. Clark, 27 Idaho 48, 146 P. 1107.

An associate prosecuting attorney assisting the prosecuting attorney has the same duty and is governed by the same rules of propriety. State v. Pointer, 106 Or. 589, 213 P. 621; Watson v. State, 7 Okl.Cr. 590, 124 P. 1101.

■ While we have generally held that where there is no objection made at the time to the statements by an attorney in his argument to the jury, the court will not consider alleged error in this respect, Cogswell v. C. C. Anderson Stores Co., 68 Idaho 205, 192 P.2d 383, this is not necessarily true as to arguments of prosecuting attorneys in criminal cases. State v. Givens, 28 Idaho 253, 152 P. 1054; State v. Owen, 73 Idaho 394, 253 P.2d 203. Where the record shows that the prosecuting attorney has been guilty of misconduct calculated to inflame the minds of jurors and arouse prejudice or

passion against the accused by statements in his argument of facts not proved by evidence, the conviction will be set aside and a new trial granted. Thurmond v. State, 57 Okl.Cr. 388, 48 P.2d 845; Cline v. State, 57 Okl.Cr. 206, 47 P.2d 191. Statements of fact not in evidence by the prosecuting attorney in his argument to the jury may constitute prejudicial misconduct. People v. Kirkes, 39 Cal.2d 719, 249 P.2d 1; People v. Evans, 39 Cal.2d 242, 246 P.2d 636; State v. Kassabian, Nev., 243 P.2d 264; Kizer v. State, 67 Okl.Cr. 16, 93 P.2d 58; Cline v. State, supra; People v. Rossi, 37 Cal.App. 778, 174 P. 916.

In State v. Owen, supra, this court recently in commenting upon improper remarks of prosecuting attorneys, quoted with approval from People v. Watson, 216 N.Y. 565, 111 N.E. 243, at page 245, as follows [73 Idaho 394, 253 P.2d 212]:

" 'Statements such as those quoted, although improper, can be disregarded by this court when the guilt of the defendant is reasonably certain. The possibility of the defendant's substantial rights having been affected are materially lessened when the trial court expressly directs the jury to disregard such statements. People v. Priori, 164 N.Y. 459, 58 N.E. 668. Counsel for the people in the trial of criminal cases should avoid allowing their zeal to overcome their better judgment and their sense of duty and right. In a case where the guilt of the defendant is doubtful, improper and unjustifiable suggestions, tending to a violation of statutory or other rights of the defendant, would require this court to order a new trial.' "

■ Where the issue of guilt is debatable or it appears from the record that the jurors could have reasonably entertained doubt as to the defendant's guilt and that misconduct of the prosecuting attorney might well have influenced the result, a conviction will be reversed. People v. Kirkes, Cal.App., 243 P.2d 816; Id., 39 Cal.2d 719, 249 P.2d 1; People v. Talle, 111 Cal. App.2d 650, 245 P.2d 633; State v. Pointer, supra.

■ In the instant case the record does not show conclusively the guilt of appellant, but, on the contrary, such issue is debatable and the jury might well have reasonably entertained doubt as to appellant's guilt. Clearly the remarks of the associate prosecuting attorney in his closing argument constituted misconduct as the same has been defined in the foregoing authorities and such misconduct requires a reversal of the judgment in this case.

In view of the fact that a new trial is being ordered, we deem it inappropriate to discuss the evidence or the sufficiency thereof.

The judgment of conviction is reversed and the cause is remanded to the trial court for new trial.

GIVENS, TAYLOR, THOMAS and KEETON, JJ., concur.