735 P.2d 1078

**STATE of Idaho, Plaintiff-Respondent,**

**v.**

**Donald TUPIS, Defendant-Appellant.**

**No. 16497.**

Court of Appeals of Idaho.

April 1, 1987.

Petition for Review Denied May 28, 1987.

Gregory A. Jones, Priest River, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., David R. Minert, Deputy Atty. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

A jury found Donald Tupis guilty of aggravated driving while under the influence of alcohol. The district court entered a judgment of conviction and committed Tupis to the custody of the state board of correction for an indeterminate period not to exceed three years. On appeal, Tupis raises three issues: (1) Should the court have granted a mistrial due to belated disclosure of exculpatory evidence? (2) Was the prosecutor's closing argument at trial so inflammatory and inaccurate as to deny Tupis a fair trial? (3) Did the court err by including a jury instruction describing alternative means of proving alcohol influence? We hold that the court did not err, nor was Tupis denied a fair trial. We affirm.

On a rainy day in June, an automobile driven by Donald Tupis left a highway and plummeted nearly eighty feet down an embankment, coming to rest on railroad tracks below the highway. Tupis and one passenger, his brother, were not severely injured. However, a pregnant female passenger suffered a fractured arm, internal injuries, and, later, the loss of her fetus.

Tupis was able to climb back to the highway and summon aid. When the police arrived at the scene, they were unable to readily determine who had been driving the vehicle. The investigating officer initially concluded that Tupis' brother had been driving and conducted the investigation accordingly. Consequently, Tupis was not directly examined for alcohol or other drug influence. Later, the investigator determined that, in fact, Tupis had been driving the vehicle.

Conflicting and ambiguous testimony was presented at trial regarding the reason for the officer's initial failure to find that Tupis was the driver and his consequent failure to test Tupis. The officer contended that he was misled by Tupis and his brother. Tupis testified that upon being questioned he told the officers to aid the injured and not to worry about "paper work." Tupis contends the officers prevented him from correcting any misconception.

Subsequently, Tupis was charged with aggravated driving under the influence of alcohol. This crime is defined by I.C. § 18–8006, which provides:

> Any person causing great bodily harm, permanent disability or permanent disfigurement to any person other than himself in committing a violation of the provisions of section 18–8004, Idaho Code [driving while under the influence of alcohol or drugs], is guilty of a felony....

At trial, Tupis admitted driving the automobile. He did not refute the state's assertion that his passenger suffered great bodily harm and permanent disfigurement. The crux of his defense was that he had not violated I.C. § 18–8004, which reads, in part:

> It is unlawful for any person who is under the influence of alcohol, drugs or any other intoxicating substances, or who has 0.10 percent or more, by weight, of alcohol in his blood, as shown by analysis of his blood, urine, breath, or other bodily substance, to drive or be in actual physical control of a motor vehicle within this state, whether upon a high-

way, street or bridge, or upon public or private property open to the public.

He presented witnesses who testified that he was not under the influence of alcohol immediately prior to or soon after the accident.

## I

We will first address the refusal of the trial court to grant a mistrial due to belated disclosure of exculpatory evidence. The state's interview of the bartender, who served Tupis immediately before the accident, revealed she did not believe Tupis to have been under the influence of alcohol prior to the accident. Tupis' counsel—a public defender—was not made aware of this information until after the first day of trial. He moved for a mistrial. The trial court reserved its decision on the motion and offered to grant a continuance to provide Tupis' counsel time for additional investigation. The attorney noted that his court calendar was full and declined the offer. The bartender later testified for the defense. Following her testimony and prior to Tupis' testimony, and again in Tupis' presence, the trial court renewed the continuance offer. The offer was again rejected. The court found no prejudice resulting from this belated revelation and denied the mistrial motion. We hold that the trial court acted properly.

Although the state has a duty to disclose to a defendant any potentially exculpatory information in its possession, I.C.R. 16, *State v. Leatherwood,* 104 Idaho 100, 656 P.2d 760 (Ct.App.1982), a tardy disclosure is not, per se, reversible error. *State v. Olsen,* 103 Idaho 278, 647 P.2d 734 (1982); *State v. Smoot,* 99 Idaho 855, 590 P.2d 1001 (1978). Where exculpatory information is belatedly disclosed, our inquiry on appeal is "whether the lateness of the disclosure so prejudiced appellant's preparation or presentation of his defense that he was prevented from receiving his constitutionally guaranteed fair trial." *United States v. Miller,* 529 F.2d 1125, 1128 (9th Cir.), *cert. denied,* 426 U.S. 924, 96 S.Ct. 2634, 49 L.Ed.2d 379 (1976) (quoted in *State v. Smoot,* 99 Idaho at 859, 590 P.2d

at 1004). On appeal from denial of a mistrial, the question before us is "whether the event which precipitated the motion for mistrial represented reversible error when viewed in the context of the full record." *See State v. Urquhart,* 105 Idaho 92, 95, 665 P.2d 1102, 1105 (Ct.App.1983).

Here, the defense was able to interview and timely present the witness. Additional time for investigation was offered, but declined. Thus, the defense had an opportunity to pursue any leads presented by this information. Although we appreciate the time constraints created by a public defender's schedule, an attorney is required to act in the best interests of the client. Obviously, a full calendar does not bar all avenues for investigation. No contention is made that other witnesses or evidence became unavailable as a result of the delayed disclosure. Ultimately, any prejudice resulted from counsel's decision to reject the continuance and not from actions of the state or of the trial court. We hold that the trial court did not err by denying the motion.

## II

We next turn to the prosecutor's closing argument. Tupis asserts that during summation the prosecutor attempted to confuse and mislead the jury regarding the law of alcohol influence, "twisted" and misstated the testimony of two defense witnesses, and attempted to "inflame" the jury by accusing the defendant of lying. He contends that this closing argument constituted prosecutorial misconduct requiring reversal. Objections were voiced to only two statements. The state acknowledges one misstatement of testimony, but contends that it was harmless and did not influence the jury. An objection to the prosecutor's statement of law resulted in a directive to the jury from the judge. The state contends that other alleged errors in the prosecutor's summation should not be reviewed on this appeal, as no objections were raised at trial.

Therefore, the threshold question presented is which statements by the prosecutor may be considered on appeal. While

it is generally true that where there is no objection to statements made by an attorney during trial the appellate court will not consider the alleged error, *State v. Sharp,* 101 Idaho 498, 616 P.2d 1034 (1980), this is not necessarily true of the closing arguments of prosecuting attorneys. *See State v. Spencer,* 74 Idaho 173, 258 P.2d 1147 (1953). An exception exists where a fundamental error abridges the constitutional right of a defendant to a fair trial in a criminal case. *State v. Lute,* 108 Idaho 905, 702 P.2d 1365 (Ct.App.1985). We will review an alleged error even in the absence of an objection if the prosecutor's comments were so egregious or inflammatory that any prejudice arising therefrom could not have been remedied by a ruling from the trial court informing the jury that any improper comments should be disregarded. *State v. Ames,* 109 Idaho 373, 707 P.2d 484 (Ct.App.1985). As a corollary, however, if an objection to the prosecutor's comment was made and sustained—but no immediate request was made for an instruction to disregard the remark—the error will not result in a reversal unless the prosecutor's comment was so inherently prejudicial that a proper instruction would have been irremediable. Accordingly, we will examine those errors to which objections were raised, and those which fall within the fundamental-error exception. *State v. Campbell,* 104 Idaho 705, 662 P.2d 1149 (Ct.App. 1983).

Here, defense counsel objected to closing statements on two occasions. With respect to the comments on the testimony of a bartender, the objection was implicitly overruled. The other objection related to the prosecutor's reference to the state's burden of proof. The court responded to the objection by advising the jury "to be sure to look at Instruction 12 on that point, if there is any confusion." Therefore none of the statements need be disregarded under *Campbell.* Thus, we will examine these two statements in the prosecutor's summation and any others which were so

egregious that any prejudice could not be remedied.

## A

■ In attempting to describe the applicable legal standard to the jury, the prosecutor stated: "[A]ny influence of alcohol puts [the victim] at risk, and that's what the law prohibits. And any influence is what you must decide." Tupis' counsel objected to this statement of the law. The trial judge directed the jury's attention to Instruction No. 12 which read:

To constitute this crime, it is not necessary that the driver of the motor vehicle be shown to have been in any particular degree or state of intoxication, but only that such driver at the time charged had consumed intoxicating liquor to such an extent as to influence or affect his driving of the motor vehicle.

On appeal, Tupis has not attacked the accuracy of the instruction.

We need not decide whether the prosecutor misstated the law. Upon a prompt objection, the trial court properly referred the jury to the statement of law included in their instructions. We believe this response effectively cured any misstatement.

## B

Tupis points to two potentially significant misstatements regarding the testimony of defense witnesses. The first relates to the testimony given by a bartender who had served Tupis' party immediately prior to the accident. Called as a witness for the defense, the bartender testified that it was her opinion "[t]hat [Tupis] wasn't under the influence of alcohol" when he left her establishment. However, the bartender also testified that her only prior experience with Tupis was an occasion when he was "drunk."

Tupis contends the prosecution misstated the bartender's testimony in closing argument when the prosecutor argued:

Now, we know that [the bartender] was wrong evaluating her other people,[1] but

---

1. The bartender testified that none of Tupis' party were under the influence of alcohol when they left her establishment. However, Tupis

testified that he insisted on driving because of his brother's intoxication and because his other passenger lacked a driver's license.

she works in a bar, she is a professional bar keep.

Unlike an officer who deals with the law and concerns himself with keeping impaired drivers off the road, people under influence at all, just like the law says any influence at all, the bartender has a kind of people in that trade necessarily are not focusing on minimum influence. They are not focusing on that. Maybe that will change. But she, I asked her, what's your frame of reference, what are you thinking of Tupis when you think about how he looked under the influence. What are you comparing on that day? She said, he was at a Halloween party and he was drunk. And I said, what do mean, and she laughed, and she said, very drunk.

I said falling down drunk? And she said, no, but she said, very drunk. So, that's what she is comparing.

What did she tell us? Not here. *But she is not telling us that he was not influenced.* [Emphasis added.]

Counsel for Tupis objected that this was a misstatement of testimony. The court implicitly overruled the objection by simply stating: "I think I will let him go ahead on final argument, Mr. Jones." No corrective instruction or admonishment resulted. On appeal, the state admits the prosecutor's account was contrary to the actual testimony of the bartender, but argues the statement was harmless.

█ As our Supreme Court has stated, "Counsel for both sides have traditionally been afforded considerable latitude in their arguments to jury and have the right to discuss fully, from their respective standpoints, the evidence and the inferences and deductions arising therefrom." *State v. Sistrunk*, 98 Idaho 629, 630, 570 P.2d 866, 867 (1977); *State v. Gilbert*, 65 Idaho 210, 142 P.2d 584 (1943). However, the prosecuting attorney does not have free rein in seeking a conviction. "A prosecutor has the responsibility of a minister of justice and not simply that of an advocate. This responsibility carries with it specific obligations to see that the defendant is accorded procedural justice and that guilt is decided upon the basis of sufficient evidence." IDAHO RULES OF PROFESSIONAL CONDUCT Rule 3.8 comment (1986). "It is the duty of a prosecuting attorney to see that the accused has a fair and impartial trial." *State v. Spencer*, 74 Idaho at 183, 258 P.2d at 1153. It is generally recognized as improper for a prosecutor to make misstatements of the evidence during argument. *See* AMERICAN BAR ASSOCIATION, STANDARDS FOR CRIMINAL JUSTICE: THE PROSECUTION FUNCTION § 5.8 (2d ed. 1980); J. STEIN, CLOSING ARGUMENTS § 16 (1985).

Although poorly stated and literally contradicting the witness, the prosecutor's statement—when viewed in context—was not a direct misstatement. It appears the prosecutor was arguing that, given her frame of reference, what the bartender meant by the phrase "not under the influence" was "not drunk." However, we of course do not know what connotation may have been given to the statement by the jury. Under these circumstances, we accept the state's position on appeal—that the prosecutor's misstatement indeed constituted error. But, applying the standard set forth below, we do not find the statement so misleading as to require reversal.

█ In *State v. Baruth*, 107 Idaho 651, 691 P.2d 1266 (Ct.App.1984), we examined our Supreme Court's opinions and concluded that the "reasonable doubt" standard described in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), should be applied by our appellate courts in cases of prosecutorial misconduct. In *Chapman* the United States Supreme Court examined the federal harmless error test in an instance of erroneously admitted evidence and concluded that there are some constitutional errors which—in the setting of a particular case—are so unimportant and insignificant that they may be deemed harmless, not requiring the automatic reversal of the conviction. But, "[b]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. at 24, 87 S.Ct. at 828. There-

fore, it is our duty to reverse unless we are convinced beyond a reasonable doubt that the same result would have been reached absent the prosecutor's erroneous or inflammatory statements, i.e., we may only affirm if we can declare a belief that any error was harmless beyond a reasonable doubt.

■ Although the prosecuting attorney's description of the testimony cannot easily be brushed aside, in this case we are able to declare such a belief. At trial, the degree of Tupis' intoxication was the primary factual issue. The state presented a series of witnesses, including experienced law officers and an emergency medical technician, who described Tupis' behavior at the accident scene and expressed the opinion that the defendant was under the influence of alcohol. They described a pattern of belligerence, abusive speech, mood swings, red and "watery" eyes, and an unstable physical condition. The passenger injured in the accident also described Tupis' alcohol consumption and manner of driving prior to the accident.

Tupis contended that the behavior and condition observed by the officers were the result of the accident, his concern for his passengers' welfare, and his general lack of respect for authority. He admitted having consumed only three beers during the afternoon preceding the accident. He disagreed with the investigator's opinion that the loss of control of the vehicle resulted from driving too fast for wet road conditions. He asserted that a shock-absorber failure caused the accident. However, neither party presented expert testimony on the shock-absorber theory. Tupis accounted for any pervasive alcohol odor at the accident scene by claiming that a damaged can of beer sprayed about the auto following the accident. The testimony of other witnesses neither confirmed nor conclusively rebutted this claim.

In addition to his own testimony, he presented three witnesses who expressed the opinion he was not under the influence. These included the bartender who had observed his behavior immediately before the ill-fated one mile drive to the accident scene, and an individual who observed his behavior earlier in the afternoon. Tupis' sister-in-law, who transported him to the hospital, testified that Tupis was not under the influence until she provided him with three beers for his pain.

Closing arguments were presented the day after presentation of the defense witnesses. Apparently as a result of overzealousness, the prosecuting attorney misstated the literal testimony of this defense witness. The misstatement was made following summation by Tupis' counsel. Therefore no opportunity to rebut or clarify was afforded the defense. However, the jury was provided with the standard instruction, "You must not consider as evidence any statement or argument of counsel." Tupis argues that the prosecutor's mischaracterization of testimony, coming as it did after the jury had been instructed on the law of alcohol influence, may have confused or misled the jury. We are not persuaded.

In denying bail while this appeal was pending, the trial judge characterized the evidence regarding alcohol influence as "very strong, although somewhat conflicting." We agree that the state presented a strong case. The evidence was sufficiently conclusive that we can declare ourselves to be without reasonable doubt that the same verdict would have resulted absent this impropriety. *E.g. State v. Baruth, supra; State v. Palin,* 106 Idaho 70, 675 P.2d 49 (Ct.App.1983).

■ Tupis alleges the prosecutor also misstated the testimony of another defense witness. Tupis' sister-in-law, who transported him to the hospital and, therefore, had an opportunity to observe him soon after the accident, testified on direct examination:

Q. Were you able to form an opinion or do you have an opinion now about whether or not he was influenced by alcohol when he arrived at your home?

A. I didn't think he was. He was hurt.

On cross-examination she responded to a series of questions on the subject. She

was asked by the prosecutor whether when answering defense counsel's inquiries, she had formed a "mental picture" of Tupis from occasions when she had observed him "drunk." She responded in the affirmative. The prosecutor then questioned her in respect to the events following the accident:

Q. Ma'am, are you certain that Donald was not in any way, not even slightly, under the influence of alcohol when he arrived at your door?

A. Am I certain?

Q. Are you certain?

A. No, I am not certain, but I don't think he was.

Q. Okay.

A. I didn't smell anything on him.

Q. And in considering that question which I just posed and what you just answered, are you comparing to when you have seen him drunk?

A. Yes, I was.

Q. Do you feel that you can see and know when someone like Donald is merely under slight influence of alcohol versus when he is really drunk?

A. I probably could. I think most people can tell if somebody is really drunk.

Q. Under the circumstances of that night, isn't it true that with the pressures on you, you could have missed that distinction?

A. I could have, but I don't think I did.

Q. Isn't it true that what you are reasonably sure of [is] that he wasn't outright drunk?

A. I am sure of it.

Q. Okay. But whether he was in some way influenced, really under the press of those circumstances is something you weren't testing or paying attention to?

A. I couldn't see it if he was.

This witness acknowledged that she was more concerned with Tupis' injuries than with conducting an alcohol evaluation. However, on redirect examination, she reaffirmed her opinion that he was not under the influence of alcohol. During summation, the prosecutor argued:

Now, [Tupis' sister-in-law], what is she telling us? He was not drunk in her opinion when he arrived at her door. What are we here to decide? That is whether he was under the influence when he was driving the car. You are not here on "drunk." But because Mr. Tupis is a heavy drinker and because in his sister-in-law's experience she compares him to the way she usually knows him with alcohol, which is heavy drinking. That's the comparison she told you about.

So, she says he was not drunk. And I asked her, couldn't he have been under the influence somewhat, somewhat under the influence? She said, yes.

Then Mr. Jones asked her, do you think he was, and she said, no. I think that was honest testimony.

\* \* \* \* \* \*

What is [she] telling us[?] Saying he wasn't drunk, he wasn't up here. When she was asked, could he be under the influence, she said, maybe, but I don't think so. Why doesn't she think so? Because her frame of reference is drunk, because that's the way she was used to seeing him. That's the way I think the testimony was. You review in your minds and see if that doesn't show you why this I believe honest lady got up there, pretty even-handed lady, and told us. He could have been, but he sure wasn't drunk.

Tupis contends that this argument also contradicted the testimony. The state asserts the prosecutor was merely attempting to persuade the jury to draw certain inferences from the witness' uncertainty. The state contends that these arguments do not constitute prosecutorial misconduct. We agree.

The prosecutor's argument centered upon the distinction between alcohol influence and drunkenness. The prosecutor attempted to cast doubt on the meaning of the sister-in-law's testimony. He had elicited testimony calling into question the ability of the witness to make this distinction.

Although a close question is presented, we believe the prosecutor's argument was permissible. Therefore, we hold that these statements did not constitute prosecutorial misconduct.

## C

■ Tupis also contends that the summation was inflammatory and that it improperly attacked the defendant's credibility. We have closely examined the transcript and do not find the prosecuting attorney's argument particularly inflammatory. The state had presented evidence reflecting on the credibility of the defendant. Therefore arguments regarding the weight to be given his testimony were proper. We have examined the record and find no other significant misconduct reflected.

■ Nor do we find the doctrine of cumulative error applicable. Although an accumulation of irregularities may in the aggregate show the absence of a fair trial, *see State v. Campbell,* 104 Idaho 705, 662 P.2d 1149 (Ct.App.1983), no error other than the misstatement of the bartender's testimony, which is admitted by the state, has been identified.

## III

■ Tupis also argues that the court erred in instructing the jury:

Any person who does not take a test to determine alcohol concentration may be prosecuted for driving or being in actual physical control of a motor vehicle while under the influence of alcohol, or any other intoxicating substances, on other competent evidence.

He contends that this instruction was "redundant and placed undue emphasis." The instruction was requested by the state to avoid any doubt in the minds of the jurors that a test for alcohol concentration was essential to prove influence. As worded by the trial court, the instruction is consistent with I.C. § 18–8004(2) and accurately reflects Idaho law. We have examined the entire set of instructions provided to the jury and find the instruction in question to be neither redundant nor to place undue emphasis on any point.

For the reasons set forth above, the judgment of conviction is affirmed.

SWANSTROM, J., concurs.

BURNETT, Judge, specially concurring.

The Court's opinion harbors an anomaly, if not an outright contradiction, in its discussion of the prosecutor's comments about the testimony given by the bartender. The Court treats these comments as error, asserting that their "connotation" to the jury is unknown. The Court then dismisses the error as harmless, asserting that "the same verdict would have resulted absent this impropriety." The Court explains its ruling by describing the state's evidence as "strong" and "sufficiently conclusive." Weighing the evidence is an improper approach to the issue of harmless error where the alleged error lies not in the admission or exclusion of evidence but in comments made by a prosecutor. The proper inquiry is whether it reasonably appears that the prosecutor's comments could have materially affected the deliberations of the jury. *See State v. LePage,* 102 Idaho 387, 630 P.2d 674 (1981). My colleagues, by predicating error upon an unknown "connotation" of the prosecutor's comments, have shortstopped the harmless error inquiry.

The Court need not have created such an anomaly. Despite the improvident concession in the state's brief, I do not think the prosecutor's comments, viewed in the full context of the trial, rose to the level of error. When the bartender testified, the prosecutor cross-examined her about the difference between a statutory standard of alcoholic "influence" and a bartender's general impression of drunkenness. In closing argument, the prosecutor returned to this theme, as reflected by the long excerpt of his remarks quoted in the Court's opinion. Only one sentence in that entire passage is alleged to represent error. It is the prosecutor's concluding statement, "[s]he is not telling us that he was not influenced." This statement does not purport to quote the bartender's testimony. Rather, it expresses, albeit awkwardly, the prosecutor's

view that the bartender had not addressed the question of "influence," in a statutory sense, during her testimony. This is a permissible line of argument.

I would hold, consistent with the district judge's response to defense counsel's objection, that the statement did not represent error. In all other respects, I concur with the Court's decision today.